[File No. 6238.]

FRANK S. KAMROWSKI, Respondent, v. NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, Appellant.

(255 N. W. 101.)

Opinion filed May 23, 1934.

*P. O. Sathre,* Attorney General, and *Milton K. Higgins,* Assistant Attorney General, for appellant.

*Buck & Buck* for respondent.

BURR, Ch. J.: A motion to dismiss the appeal, based upon alleged delay on the part of appellant to have settlement of the statement of the case made, briefs filed, and the record transmitted to this court

within the time prescribed by law, was made prior to the argument on the merits. There was delay on the part of the appellant, but in our judgment, the showing made as to change in politicial administration, the re-organization of the Attorney General's department and the consequent delays incident thereto, excuses the delay and the appellant is entitled to have the case heard upon the merits.

For over twenty years the plaintiff has been an employee of the State "working at his trade as a butcher at the state hospital for the insane at Jamestown, North Dakota."

It is the contention of the plaintiff that in the course of employment he injured his right eye so that he "has lost at least 90% of the vision of that eye, and is permanently and severely injured, and has suffered pain and suffering because thereof, and has been required to expend large sums of money for medical attention to said eye." The bureau disallowed the claim and on appeal to the district court the case was heard without a jury.

The court found that the injuries were sustained during the course of the employment and allowed plaintiff compensation for one hundred weeks at the rate of $14.17 per week, allowed medical expenses incident to the injury in the sum of $140.33, and allowed him $150.00 as attorneys' fees. Judgment in accordance with these findings was entered and the defendant appeals.

The sole issue is whether the plaintiff has established that he received his injury during the course of employment.

"The burden is upon the claimant to prove, by a preponderance of the evidence, that the injury, for which compensation is claimed was received in the course of the employment." Dehn v. Kitchen, 54 N. D. 199, 209 N. W. 364; Pace v. North Dakota Workmen's Comp. Bureau, 51 N. D. 815, 201 N. W. 348. Such burden "is not sustained by mere surmise or conjecture, and a purely speculative case is not within the protection of the statute." Pfeiffer v. North Dakota Workmen's Comp. Bureau, 57 N. D. 326, 338, 221 N. W. 894.

On-appeal the findings of the trial court are presumed to be correct. Gotchy v. North Dakota Workmen's Comp. Bureau, 49 N. D. 915, 194 N. W. 663.

In September 1931 the defendant noticed that his right eye had become inflamed. A year before this an ulcer had formed in the eye,

a scar was caused, and he had received treatment for inflammation. The record shows however, that this first affection had been cured. However, the second was somewhat similar and it was discovered that the cornea was inflamed at a spot near where the previous inflammation had been. The plaintiff was treated by various doctors and there is no question but what his eye is permanently injured to the extent found by the trial court.

The one doctor who testified stated that he never knew the cause of the accident; that in the course of the treatment the patient did not tell him the cause of the accident and, apparently, did not know what caused the injury; that nothing was said about it; that the ulcer had been caused by some break in the cornea which would permit entrance of germs and thus an infection start; that an object such as a cinder, a grain of sand, or a fine piece of glass sharp enough to penetrate the eye ball could cause the abrasion; that some time prior to this second infection plaintiff had been vaccinated and possibly by means of rubbing the eye some vaccine had reached the eye; but that so far as he knew the infection which caused this ulcer would not come from vaccination. He thought if there had been an injury to the eye prior to vaccination, and some of the vaccine was rubbed into the eye by means of the finger, it would have a tendency to inflame the eye; but was positive there was no connection between the two injuries.

Letters written by doctors connected with the clinic in St. Paul were introduced and in one of the letters the doctor stated that the "second ulcer is undoubtedly dependent upon the former and may have broken down without any attending injury." He stated that the cause "was traumatic but the exact origin of the trauma cannot be stated. . . . It is impossible to make a definite statement as to whether this ulcer occurred as a result of the injury while in the line of employment but it seems rather definite that it was dependent upon some accident traumatic in origin." This is the gist of the medical testimony.

The plaintiff advances a theory that the second injury may have been caused by a hog bristle striking his eye while employed in the scraping of hogs. There is testimony to the effect that in scraping carcasses the bristles fly in all directions; they lodge in the nose, ears, mouth, eyes and breast, and cause a stinging sensation at times. The

plaintiff cited an incident which happened in February 1932 when a bristle struck his eyelid, caused a slight bleeding, and fell out. When this happened it occurred to him that possibly a bristle had struck the eye ball in September 1931 and caused a slight puncture so that infection had set in. Defendant himself testified that he did not know what caused the injury; that no bristle had ever stuck in his eye and stayed there, but bristles would fly into his face and mouth and eyes; that many had gone under the eyelids and were required to be taken out, but he never knew of any that had stuck in his eye; that if any bristle did do so he did not know it and had no remembrance of any such happening; the reason he advanced the theory that possibly the injury had been caused by a bristle was because one of the bristles had struck his eye lid in February 1932 and "I could not think of anything that could have done it except that the bristle did hurt me." The plaintiff testified that he had been scraping hogs for twenty years, that always while scraping, the bristles flew in his face but he never knew of any bristle that drew blood except the incident of February 1932, and if it had not been for this incident he would not have advanced the theory of the ulcer being caused by a bristle.

The testimony is rather vague as to what length of time would intervene between the injury and the formation of the ulcer to such an extent that it would be noticed. Assuming that it would be a short time there is no direct testimony that any bristle was in the eye of the plaintiff at that time. It is true he testifies that it was a common occurrence when scraping hogs to have the bristles fly and strike him on the face and body but he has no recollection of any incident which suggested the presence of a bristle in his eye, and had no recollection of any incident which caused a stinging or irritation in the eye on or about the time the injury must have been received. It is pure speculation to assume the injury occurred during employment. No one testified that it did, or that while employed claimant felt even a pain in the eye. If injury was then received we would not be so concerned about the cause. The cause might be important in determining when the injury was received; but plaintiff is entitled to compensation if injured in the course of his employment, even if the cause be obscure or even at times unknown. The plaintiff appears to be an honorable and truthful witness. He did not know when he received the injury—in

fact did not know he was injured until the ulcer developed. He was puzzled over the cause. But a "cause" might be of value in determining time and place. He could think of no cause. At the time of the injury, it never occurred to him that it might have been caused by a bristle. He would not have thought about it had it not been for the incident of February 1932. Even then this latter incident did not stimulate his memory so that he recalled something of the same kind in September, 1931. The plaintiff drove to and from his work and one may suggest the possibility of a cinder, a grain of sand, a particle of glass or some very sharp object may have struck his eye and yet not with sufficient force to fix itself in his mind. There is no greater presumption in favor of the bristle than there would be in these other possible causes.

The plaintiff cites Stuart v. Kansas City, 102 Kan. 307, 171 P. 913, and several other cases to show that a workman may be "entitled to compensation, although he cannot explain how the accident happened." This is true, provided he shows that the cause happened during his employment.

Plaintiff cites Re Uzzio, 228 Mass. 331, 117 N. E. 349, to show that the conclusion as to the cause of the injury "may be reached not only by direct evidence of fact, but by reasonable inferences therefrom." This is correct doctrine but the reasonable inferences must be based upon some evidence showing that while employed he was injured. There are many cases where a person is injured while employed and yet cannot tell how the injury happened. The difficulty in this case is to show he was injured while employed. If this were established then the difficulty of showing just what caused the injury would not necessarily preclude compensation.

Plaintiff cites Michigan Transit Corp. v. Brown (D. C.) 56 F. (2d) 200, and eight other cases to show that the "injury arises out of employment when there appears to rational mind, on considering all circumstances, causal connection between conditions under which work must be performed and resulting injury." It is true that if a workman is required to work where there is extreme heat, and is found dead from circumstances indicating a heat stroke it is a fair assumption that it was caused by this employment (Lane v. Horn & H. Co. 261 Pa. 329, 104 A. 615, 13 A.L.R. 963, 17 N. C. C. A. 998); but the difficulty in

the case at bar is that there is nothing whatever to indicate that the abrasion which permitted the formation of the ulcer happened during employment. If there was reasonable assumption as to this it would be immaterial just what caused the abrasion.

The theory of the bristle would be a plausible one in such an event. Here in the case at bar there is no suggestion of any kind upon which an inference can be founded showing that what would have caused the abrasion happened during the course of employment. If it were shown that the initial injury to the eye occurred during employment then the plaintiff would not be required to prove the cause and the theory of the bristle would be a plausible explanation to substantiate the claim that the injury was in fact received during employment. But where fine sand or a cinder or a piece of glass or any other sharp substance striking the eye would cause the condition there is as much right to speculation as to this cause as to any other. It is true there is no testimony showing that a cinder or piece of glass struck the eye on or about the time the ulcer must have formed; but neither is there that a bristle did or any other cause while employed.

Plaintiff cites the case of Pfeiffer v. North Dakota Workmen's Comp. Bureau, 57 N. D. 326, 221 N. W. 894, in support of his claim. In this case we said "it is not necessary that the testimony adduced be free from all speculation." But there was no speculation as to the injury, though there was medical speculation as to the cause of the disease said to have been accelerated. There was uncontradicted testimony showing that the mechanic was struck in the eye by a wrench, a tumor thereafter developed causing blindness and a medical expert testified that such condition was a proper and natural result of such injury. There was a plausible case established. There was a result proven and testimony showing a connection between the injury received and the result.

Plaintiff cites McCauley v. Imperial Woolen Co. 261 Pa. 329, 104 A. 617, 17 N. C. C. A. 864, where a wool sorter contracted anthrax and died. That death was caused by anthrax was proved. The speculation was as to the cause of the anthrax. It was shown that "anthrax is primarily a disease of animals, such as sheep" that the bacillus was frequently found in the hides and the wool handled, that the medical testimony showed that "in the majority of cases the inoculation which

causes external anthrax occurs through a scratch or an abrasion of the skin," and it was a fair assumption that this is how the worker contracted the disease.

The case of Kraker v. Nett, 148 Minn. 139, 180 N. W. 1014, is also cited to show that where the physician testified that consequent loss of an eye might have resulted from cement getting into that eye the court held that this was sufficient proof that the loss was due to the cement blown on a windy day, while the employee was handling it. But the claimant testified that while handling the cement some got into his eye, the eye became inflamed and pain was caused almost immediately. The doctor said that cement could cause such result.

Plaintiff cited many other cases but when we examine these we find that all were cases where the court found that the result was the ordinary and probable result of work in which the employee was engaged and while there may have been some speculation as to the immediate cause yet reasoning a posteriori the cause was found. Such inference is not speculative, it is a deduction. Had there been testimony showing that while this plaintiff was working he felt a stinging sensation in his eye and that shortly thereafter an ulcer formed then the theory that this stinging was caused by a bristle would be a fair deduction and inference.

Plaintiff cites the case of Brown v. North Dakota Workmen's Comp. Bureau, 55 N. D. 491, 214 N. W. 622, as authority sufficient to sustain the assumption in this case that the injury could have been caused by the bristle. However in the case cited there was medical testimony showing that in the opinion of the expert the injury was due to the work in which the claimant was engaged and while his opinion was largely speculative he still maintained that the injury was the result of her employment as a telephone operator. Here there is no medical testimony whatever tending to show any cause whatever, much less occurring during employment. The doctor treated the defendant. He had no opinion whatever as to its cause nor was there any other testimony offered along this line. As stated in Dehn v. Kitchen, 54 N. D. 199, 209 N. W. 364, supra, compensation cannot be made when one "must necessarily deal entirely in the field of speculation" as to the cause and there must be some connection shown between the alleged cause and the effect. No connection is shown when the alleged cause

is not established. The record is silent as to any bristle striking the eye ball at the time the injury was received. The fact that the plaintiff was at that time engaged in the business of scraping hogs and that ordinarily, while engaged in that business, the bristles flew all over and possibly one may have pierced his eye is not establishing that the injury occurred during employment. His own testimony shows that while bristles came into the eye he simply removed them from under the eye lid and so far as he knew had never suffered injury. Compensation cannot be awarded on such speculative theory as is advanced in this case. The judgment is reversed and the case dismissed.

BURKE, NUESSLE, CHRISTIANSON and MOELLRING, JJ., concur.