[File No. 6679.]

MRS. FRANCES BOOKE, Respondent, v. THE WORKMEN'S
COMPENSATION BUREAU OF THE STATE OF NORTH
DAKOTA, Appellant.

(297 N. W. 779.)

Opinion filed March 24, 1941.   Rehearing denied May 17, 1941.

*Lynn G. Grimson,* Assistant Attorney General, and *A. M. Kuhfeld,* for appellant.

*Murray & Murray,* for respondent.

BURR, Ch. J.   Plaintiff, widow of Henry Booke, applied to the bureau for compensation for herself and for her minor children, alleging that on January 4, 1937, and for some time prior thereto, Booke had been employed by the Lehigh Briquetting Company; that the Company had complied with the necessary provisions with reference to compensation; that on January 4, 1937, Booke met with an accident in the course of his employment, and died that day; that she had filed her claim with the bureau, and it had been disallowed.

The answer denies that Booke died because of any injury by accident received in the course of his employment, though admitting that Booke was employed by the Briquetting Company on January 4. The answer sets up, among other things, that Booke did not die until February 8, 1937; and at that time he was in "the employ of the United States Government on a Works Progress Administration Project, and that his death was caused by a disease known as angina pectoris, and that if said disease and the resulting death of the said Henry Booke was in any way attributable to his employment, it was to his employment on the Works Progress Administration Project."

The trial court found for the plaintiff, and judgment was entered accordingly.

The defendant made a motion for a new trial on the ground of insufficiency of the evidence, and of newly discovered evidence based upon affidavits, alleging that the plaintiff had "committed and perpetrated a fraud upon the court in not disclosing to the court in the trial or in the course of these proceedings the fact that she had remarried prior to the trial of said cause and in being sworn as a witness in the

name of Mrs. Frances Booke without advising the court of her change of marital status."

A third point raised on appeal involves the jurisdiction of the trial court, and is based upon the contention that the petition on appeal from the bureau's order had never been served upon the bureau.

This matter is before us upon the appeal from the judgment of the trial court in the main action and from the order denying the new trial, the specifications of error setting forth the three contentions mentioned.

Plaintiff admits her husband died on February 8, 1937, while in the employ of the United States Government on a W. P. A. project.

The deceased began working for the Briquetting Company in 1928 or '9, and remained in its employ until the 19th of January, 1937. On February 1 of that year, the Company rehired him to take a load of "char" to Grand Forks, and he returned on February 4. This was the last work he did for the Company and the last time he was in its employ.

On February 8, 1937, Booke commenced work under the W. P. A. He, with fellow employees, was being conveyed to their work in a truck, furnished for that purpose, the temperature being about twenty degrees below zero. While on the way, the truck stalled because of snow, and some of the employees undertook to shovel. Booke, at that time, was about forty-nine years of age. Fellow employees called him an old man, and he was permitted to remain in the truck while others shoveled. Finding it difficult to release the truck, Booke and others undertook to walk. "It wasn't bad walking at all," one of the witnesses states, but after walking about three-quarters of a mile, Booke fell to the ground because of a heart· affection, and died shortly afterwards.

The burden of proof is upon the plaintiff to show she is entitled to share in the fund. Kamrowski v. North Dakota Workmen's Comp. Bureau, 64 N. D. 610, 255 N. W. 101; Dehn v. Kitchen, 54 N. D. 199, 209 N. W. 364. Such proof must amount to something more than mere guess. Such burden has not been sustained "where the alleged cause is purely speculative and the injury may equally well have been occasioned by factors entirely different from the one advanced as a theory and entirely removed in time from the course of

the employment. . . ." Kamrowski v. North Dakota Workmen's Comp. Bureau, supra.

See also Shamp v. Landy Clark Co. 134 Neb. 73, 277 N. W. 802. Awards cannot be based "upon possibilities or probabilities, but only upon sufficient evidence showing that the claimant" was injured in the course of the employment alleged in the claim. Saxton v. Sinclair Ref. Co. 125 Neb. 468, 250 N. W. 655. "It is incumbent upon claimant . . . to establish a proximate and causal connection between injury received and death." Slack v. C. L. Percival Co. 198 Iowa 54, 199 N. W. 323.

During the time Booke was working for the Company, he consulted Dr. Rodgers, his family physician, relative to cough and irritation of lungs. The doctor examined him in August of 1936 and told him he could continue his work. Another examination was held in the following January, and at that time the doctor advised him to seek other employment. It was because of this advice he severed his connections with the Briquetting Company.

The record shows that during his work for the Briquetting Company, he was, by the nature of his work, required to be where there were clouds of coal dust, and that he inhaled some of the dust, which caused coughing and irritation at times.

The post-mortem examination revealed some pigmentation of the lungs because of coal dust. The heart was normal in size for a man of his age, and the degree of arterial sclerosis disclosed was such as one expected of a man of his age and habits.

Three physicians testified at the trial—two for the plaintiff and one for the defendant. All agree that if Booke were afflicted by the heart condition, known as angina pectoris, such exertion as walking might cause death; that because of walking through snow for a distance of three-quarters of a mile on a slight upward grade, as the testimony showed was the condition of the road, and in cold of twenty degrees below zero, the walking and the cold in all probability brought on the attack which resulted in his death.

The trial court, in his memorandum opinion, sets forth the issues as follows: "In this case the final cause of death was angina pectoris, but plaintiff contends that this ailment was aggravated by decedent's

lung condition caused by dust and coal slack inhaled during his employment as to be the proximate cause of his death."

Under the provisions of § 396a10 of the Supp. as amended by chapter 313, Session Laws 1931, and chapter 286, Session Laws 1935, it is the duty of the bureau to disburse the fund to such employees as "have been injured in the course of their employment, wherever such injuries have occurred, or to their dependents in case death has ensued. . . ."

The provisions of the Workmen's Compensation Act are construed liberally in favor of the workman. The fund is created to protect the workman; but it is limited to injuries by accident occurring in the course of the employment. It is not a health or accident insurance fund.

The term "injury" is limited by the law in effect at the time of the death to "an injury arising in the course of employment, . . . The term 'injury' includes in addition to any injury by accident, any disease approximately caused by the employment. . . ." § 396a2, as amended by chap. 286, Sess. Laws 1935.

In order, therefore, to recover, the plaintiff must show her husband died because of an injury by accident received while he was working for the Briquetting Company, or that he died from a disease approximately caused by that employment.

The decedent died because of some heart trouble. This is established beyond any question. The family physician, who conducted the post mortem, certified that he died from this condition. He says that while "The post mortem revealed no definite cause of death," he concluded that angina pectoris was the cause of death.

He testified that the only definite evidence he found on the post mortem which related to his employment at all was the pigment on the lungs; that such condition was common to those who were employed in the coal mine; that it would clear up upon the cessation of employment; for that reason he had advised a change of employment; this inhaling caused coughing and some irritation of the lung. Witness said he never knew of anyone dying as a result of inhaling coal dust; "Most of the men employed in the plant will breathe that. It will usually clear up." On any examination before death, he had not suspected angina pectoris; the post mortem revealed the heart of the

decedent was normal and in good shape, such as one expected to find in a man of his age.

There is no proof whatever connecting the condition of the heart with the employment. It is true that in answer to an extended hypothetical question, which omitted any reference whatever to the origin of agina pectoris, but which asked his opinion whether the "death resulted approximately from his employment and the character of the work he did out there at the lignite briquetting plant," the family physician said, "I would say this, that the employment probably would contribute to hasten his death." This doctor stated that chronic lung diseases would affect the heart, and if a heart became diseased, death was liable to result, and probably would result; but he testified that the death was caused by angina pectoris, and in answer to the question whether his death "was related in any way to his employment by the Lehigh Briquetting Company," he answered, "I'll qualify that by saying directly, no, but it is a difficult subject to answer. I think that undoubtedly his employment may have hastened his death;" and again, he said: "I am certainly not trying to attribute his death to his occupation, *because I don't feel that his occupation was the cause of his angina,* but I don't think anybody could get up and say that the cough that he had and the irritation and periods of shortness of breath had not probably contributed to aggravating the condition; how much is not for me to say."

The same doctor also stated: that cases were reported where a person died of angina pectoris without having had a previous attack; that he knew of one that had happened about three weeks before he testified; "that cold and exercise is one of the primary causes of angina pectoris." When asked directly, "What was the thing that caused him to die of angina pectoris at that time?" his answer was, "The attack was initiated by the exercise and by the cold," and he further stated it was a fair proposition that if it had not been for walking in the cold, he would have been alive at that time. This is the general conclusion of the other doctors.

Another doctor, witness for the plaintiff, gave his opinion upon a hypothetical question based upon Dr. Rodgers' testimony, and testified: that the coughing would indicate the decedent had an affection of his lungs, and the exertion would affect the heart; assuming that

the facts stated in the hypothetical question were correct, his conclusion was that the deceased "might have had angina pectoris, though it is open to debate. He might have died of a cardiac failure, a carditis." His conclusion was that the cause of death was debatable between angina and cardiac failure.

The third doctor, a witness for the defendant, gives practically the same testimony. He listened to the testimony of Dr. Rodgers, and to the hypothetical question propounded him. In answer to a similar one, gave it as his opinion that the deceased had heart trouble, and "it might have been angina pectoris that he had."

All the doctors agree that the immediate cause of death was the exposure to the cold and the exertion of walking, which brought on a heart attack so that the deceased died shortly after he fell to the ground. Opinions differ somewhat as to the effect of inhaling coal dust, but it is clear from the record that such a condition of the lung as was found here was merely a normal result of the work and would clear up upon ceasing work; that while it would cause coughing and irritation, which would have some effect upon the heart, it was not the immediate cause of death.

The only "injury by accident" claimed is that either the heart condition was caused by his employment, or that any heart condition which the deceased had was aggravated by the employment so as to cause his death.

Under any theory based on the facts, it is clear the death was due to the heart condition. There is nothing to show the heart condition originated during the time of the employment, and though the acceleration of a pre-existing disease by an accident occurring in the course of the employment may be compensable, it is the aggravation which is compensable, not the pre-existing disease. Pace v. North Dakota Workmen's Comp. Bureau, 51 N. D. 815, 201 N. W. 348.

Plaintiff's family physician testified that, in all probability, Booke would have been alive at the time of trial had it not been for the aggravation by the walking in the snow and the extreme cold, but this aggravation occurred in the employment of the W. P. A.

Had death ensued during the course of the employment with the Briquetting Company, then, even if the angina pectoris did not originate in the course of the employment, nevertheless, an aggravation

thereof because of the employment, and during the employment, might be compensable. See Gilbert v. State Compensation Comr. 121 W. Va. 10, 1 S. E. (2d) 167; Southern Casualty Co. v. Flores (Tex. Com. App.) 1 S. W. (2d) 260; Roland v. Employers' Casualty Co. (Tex. Civ. App.) 290 S. W. 895; Foster v. State College, 124 Pa. Super. Ct. 492, 189 A. 786; Strode v. Donahoe's Fifth Ave. Store, 127 Pa. Super. Ct. 231, 193 A. 86; Morrill v. Charles Bianchi & Sons, 107 Vt. 80, 176 A. 416.

In Pierce v. Phelps Dodge Corp. 42 Ariz. 436, 26 P. (2d) 1017, there is an excellent, well-considered review of the meaning of the term "injury by accident." The court shows that the word "accident" refers "solely to cause of injury, not injury itself, so that sudden and unexpected event which must exist to give right to compensation must be found in original cause of injury, not in result."

The Arizona court shows that the "accident" is the "cause," the "injury" is the "result." Here the cause of death was angina pectoris; the aggravation of the cause was the walking through snow in extremely cold weather and occurred in the W. P. A. employment; the result was death during this later employment. There is no proof that the angina pectoris arose in the employment of the Briquetting Company or was proximately caused by his employment therein, and the death occurred after his employment ceased.

Because of the factual situation, we need not consider the other points raised by appellant.

The judgment is reversed.

CHRISTIANSON, MORRIS, BURKE, and NUESSLE, JJ., concur.