[File No. 6743]

MRS. HESTER McKINNON, Respondent, v. NORTH DAKOTA
WORKMEN'S COMPENSATION BUREAU, Appellant.

(299 NW 856)

Opinion filed August 28, 1941

*Alvin C. Strutz,* Attorney General, and *A. M. Kuhfeld* and *Lynn G. Grimson,* Assistant Attorneys General, for appellant.

*Burtness & Shaft,* for respondent.

BURR, Ch. J. On March 2, 1939, Ronald McKinnon, while an employee of the North Dakota state highway department as an engineer, died from lobar pneumonia. The plaintiff, his wife, on behalf of herself and her infant child, applied to the bureau for compensation, which was denied on the ground the disease was not "approximately caused by the employment." Plaintiff appealed, and the matter was tried to the court without a jury. Judgment was ordered for the plaintiff, and defendant appeals.

The record shows the employment of the deceased began in July, 1938, when he worked at Larimore, and later at Hillsboro. During this time he lived at Grand Forks, and drove back and forth every day to Larimore and to Hillsboro. Thereafter he worked in snow prevention work around Finley. In the following December he was assigned to a job near Petersburg. Here, in February, 1939, he was working at a gravel pit. The camp car was about six feet by eight feet, had a single layer of siding, was heated by a coal laundry stove, which would overheat the car, so the door had to be opened. It was part of his business to go out to the pit to test gravel. Several employees made use of the office, and some of them had common colds.

During this month, the temperature ranged from 39° above to 33° below zero. While the record showed 32 below on the twentieth of February and 18 below on the twenty-fourth of February, these were the night records. The high records for the same period were from 4 below to 33 above. The deceased had a cold for some time, and drove to Grand Forks on February 27 to consult Dr. Robertson, who found no chest congestion. The next day he left his job and drove in an automobile from the camp to his home near Clyde, North Dakota, a distance of approximately one hundred miles, as he was accustomed to do each week-end.

The following day Dr. Mulligan was called. The deceased had developed a temperature which went as high as 105, and the doctor diagnosed his case as pneumonia. He found the deceased "congested throughout the whole chest."

Section 1, chapter 286 of the Session Laws of 1935, amending § 2, chapter 162 of the Session Laws of 1919, provides, with reference to injuries which are compensable, "The term 'injury' includes in addition to any injury by accident, any disease approximately caused by the employment."

The sole question here is whether the plaintiff has shown the lobar pneumonia was "approximately caused by the employment."

There is a distinction between a physical injury occurring *in the course of employment* and a disease approximately caused *by the employment*. A compensable injury need not arise out of the employment, nor be caused by the employment. However, the injury is compensable if received in the course of employment. But a disease from which a worker dies must be one approximately caused by the employment in order to be compensable.

Five doctors testified—three produced by the plaintiff and two by the defense. There is little vital difference in the testimony of these experts. All were agreed that the time of origin of the trouble was a matter of speculation; that there are many different factors entering into the subject.

From these experts we learn there are thirty-two types of pneumococci pneumonia, and approximately twenty-five other kinds; the germs may be latent in a patient for an indefinite time; large numbers of people carry them about all of the time; just where these come from cannot be told; they become active according to place, condition, extent of resisting power, and many other factors. As Dr. Robertson, one of plaintiff's witnesses, shows, the practitioner forms a conclusion as to "the type of spread (of the infection) depending upon whose book you happen to read." He further stated that the authorities agree the germ is present in the throat under normal conditions. He later testified: "The controversial part, as to whether or not lowering of resistance, or of cold, as you are interested in, can cause this, again you find evidence on both sides, and Osler, I believe, and McCurry, who later revised his text, is a good authority. He states that such is the case. In Tice's series he states that such is the case. In some of the more recent articles appearing in magazines they state that it is not true, that the bug is there always and just enters by way of lowered resistance or by overpowering the affection it attempts to assume. This is not a discourse,

but I want to get it off my chest. They will say that bronchial pneumonia probably is caused, or is more likely to take place in thermal changes, that is, exposure to changes in temperature, that lobar pneumonia does not so frequently occur this way. And again the same individuals state that lobar pneumonia at the start is essentially a bronchial pneumococci condition. There again you can have your choice."

This is typical of the testimony given by all of the experts. After listening to a lengthy hypothetical question, embracing most, if not all, of the facts adduced with reference to exposure, Dr. Robertson was asked as to the "most probable precipitating cause of his contracting pneumonia." He answered, "I would say this: I would not say that is the cause, but it is my sincere conviction that it could be the cause."

Plaintiff's witness Dr. Mulligan, when asked if he could tell "when the pneumonia took a hold," answered, "No, I couldn't tell you." When asked, "You couldn't tell about how advanced it was?" he answered, "It was a fulminating thing, very fulminating. I don't know how long he had been feeling badly." In a question addressed to him, it was stated, "We want to know whether it was just a plain case of pneumonia or whether it could be proximately caused by his employment on the highway." The doctor answered, "Of course, I certainly would hate—It is impossible to give a definite statement. It is certainly possible. I don't know under what condition he was working. If he would be working outside and didn't get warm and go outside again, it certainly is possible that could give infection."

There is medical testimony to the effect "that a person with a common cold is very definitely predisposed to the pneumococci infiltration." But where did deceased get his cold?

Frankly the doctors testified that medical science really did not know whether certain conditions could be important contributing factors, such as fatigue, smoking, improper diet, etc., though by some they were considered factors. When asked if conditions which occurred in the prior June and July, or the preceding March, April and May would have any bearing, one answered, "It would be difficult (to say). There would be a reasonable limit, I suppose, but even a matter of considerable months could be a factor, according to some of the workers, in making it more possible or likely for an individual to contract this disease."

There is nothing to indicate the doctors were testifying "for" one

side or the other. One expert showed the difficulty of ascertaining the type of disease without minute analysis, and that the pneumonia could have been contracted on the drive from Grand Forks to Petersburg. Quite evidently each doctor was giving his very best judgment and understanding of the disease, and the opinions, in the main, coincided. One thing is shown definitely—no one was able to tell when the germs entered the body of the deceased, or could give any probability as to the time. On February 27, deceased had driven to Grand Forks on his own business. Did he become infected then? Did he get the germs on his way home to Clyde, when he was not in the employ of the state? Or when at work in Larimore, Hillsboro, Finley? None of the experts hazarded any opinion as to any probable maximum or minimum time of infection. Consequently, there is nothing upon which we can base a statement that the preponderance of the evidence shows the disease was approximately caused by the employment.

The terms "approximately" and "proximately" are practically synonymous, so far as the law involved is concerned. P. B. Arnold Co. v. Buchanan, 60 Ind App 626, 634, 111 NE 204, 207; Averill v. Hart & O'Farrell, 101 W Va 411, 423, 132 SE 870, 875. The disease must have been produced by the employment, for the term "proximately caused" means just that. See McGregor v. Wright, 117 Cal App 186, 197, 3 P(2d) 624, 629, where the term is applied to an injury. The approximate cause must be traced to, and be caused by, the employment.

In Milwaukee v. Industrial Commission, 160 Wis 238, 246, 151 NW 247, 249, the court was considering the term "proximately caused" in its relation to an accident, and held that there must be a chain of causation which, both as to time, place, and effect, is so closely related to the accident that the injury can be said to be proximately caused thereby.

This interpretation holds good here, for the disease must be approximately caused by the employment, and, therefore, there must be shown to be this direct "chain of causation."

As stated in Tweten v. North Dakota Workmen's Comp. Bureau, 69 ND 369, 380, 287 NW 304, 310, "The Workmen's Compensation Act does not provide for a general health insurance or for general accident insurance. It covers neither accidents sustained nor diseases contracted by an employee outside of his employment."

See also Dehn v. Kitchen, 54 ND 199, 210, 209 NW 364, 368.

In Sandlie v. Workmen's Comp. Bureau, 70 ND 449, 295 NW 497, we considered injury from disease and the necessity for proof of origin. In this Sandlie Case the evidence showed clearly the disease was not approximately caused by the employment. In this case the weakness lies in the failure of proof showing when the disease originated and what caused it; but the same principle applies.

In the recent case of Booke v. Workmen's Comp. Bureau, 70 ND 714, 297 NW 779, we show the burden of proof is not sustained where the basis is purely speculative and the record is silent as to the origin of the diseased condition.

As pointed out in Kamrowski v. North Dakota Workmen's Comp. Bureau, 64 ND 610, 255 NW 101, "where the alleged cause is purely speculative and the injury may equally well have been occasioned by factors entirely different from the one advanced as a theory and entirely removed in time from the course of the employment, so that there is no evidence whatever showing when the injury was received, no recovery can be had."

This principle applies equally to disease claimed to have been caused by the employment.

Plaintiff relies strongly upon the case of Tweten v. Workmen's Comp. Bureau, supra, where participation in the fund was directed in a case where the deceased had died from pneumonia. While in this case cited we point out the "uncertainty and conflict among the medical experts as to the period of incubation of lobar pneumonia" (69 ND 373, 287 NW 306), the evidence showed the deceased had been working in the cold spring in water and melting snow, until his clothes were soaked; he was actually working at the time he was overcome; had been for some time suffering from a cold, which showed first incidence during his work; and that on the day he was taken home, he was overcome with pneumonia during his work, so that he was lying upon the cold and damp ground for some time. He had a high fever on that day, his case was diagnosed the next day as pneumonia, and he died about a week afterwards. Thus we held there was sufficient evidence to justify the trial court in finding the preponderance of the evidence showed the deceased had died from a disease "approximately caused by his employment."

In the case at bar, there was nothing unusual in the work of the de-

ceased. Just when he was inoculated by the germ no one could tell. There was nothing to suggest a probability of when this inoculation took place. He did contract a cold. The source was not shown in any way. He left his employment, and drove home while suffering from a cold. On the way he stopped at some small town. Later he developed pneumonia. This is the extreme to which the evidence will go, and it is not sufficient to show that the disease was "approximately caused by the empolyment."

The uncertainty of medical testimony is present in this case as in the Tweten case, but the case at bar lacks the definite, physical conditions which were present in the Tweten case, and which justified an affirmance of the judgment. Here there is no telling when the pneumonic germ entered the system, not even the probability present in the Tweten case; the record is silent that anyone else working under the same conditions contracted pneumonia or suffered any serious condition. Just when and where the deceased contracted the disease we do not know. Just how long it would be incubating could not be told. That he did develop pneumonia during the period he was employed is clear, and he died therefrom, but that is not sufficient to show when the disease was contracted, or that it was caused by the employment. For this reason the judgment of the lower court must be reversed and the action dismissed.

CHRISTIANSON, MORRIS, BURKE, and NUESSLE, JJ., concur.