Merlin A. STEELE, Appellant,

v.

NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, Appellee.

Civ. No. 9481.

Supreme Court of North Dakota.

Nov. 28, 1978.

Rehearings Denied Jan. 8, 1979.

Daniel E. Buchanan, Jamestown, for appellant.

Richard J. Gross, Sp. Asst. Atty. Gen., Bismarck, for appellee.

SAND, Justice.

This is an appeal from a Workmen's Compensation Bureau decision, which was affirmed by the Stutsman County district court, denying benefits under the Workmen's Compensation Act to Merlin A. Steele.

On 25 January 1977 Merlin A. Steele filed a claim with the North Dakota Workmen's Compensation Bureau [hereinafter Bureau] claiming that while delivering beer on 10 January 1977 his arm got stiff and gradually got worse so that on Wednesday he could hardly bend his arm, and that he couldn't get to see a doctor until Friday 14 January

1977, when he was seen by Dr. Blackwelder, who referred him to Dr. Reiswig.

The Bureau wrote to Dr. Blackwelder stating it was unable to give further consideration to the claim because it had not received a report from him. Dr. Blackwelder submitted the attending physician's report, dated 21 February 1977, which merely stated that the claimant had pain and swelling of the right elbow and that after he was X-rayed he was referred to Dr. Reiswig at the Fargo Clinic. This report form contained the question, "Is present disability due to an occupational disease or injury?" to which Dr. Blackwelder answered "Yes." In a letter dated 7 February 1977 Dr. Philip H. Reiswig advised the Bureau that Mr. Steele was admitted to St. Luke's Hospital on 15 January 1977 and discharged on 18 January 1977; that the problem was a loose body of the right elbow; that the patient developed pain in the right elbow about one week prior to admission, which became so severe that he was unable to do his work; that there was no direct history of injury; that the difficulty with the elbow could be related to repeated use of his elbow; that the period of disability was estimated to be approximately six weeks; and that there may be some permanent disability associated with the elbow, but was not believed to be significant.

Dr. Reiswig, by letter to the Bureau dated 9 March 1977 wrote that the claimant informed him his claim was denied and submitted the following:,

"It is possible that with repeated use of his elbow in lifting heavy beer cases a chip of cartilage could have come loose from his articular cartilage of his joint and resulted in the loose bodies that were found at the time of surgery. It is not unreasonable to associate his occupation with the problem in his elbow."

This letter was "stamped in" by the Bureau on 10 March 1977.

The Bureau, on 10 March 1977, issued its findings of fact, conclusions of law, and order for dismissal, concluding that the claimant failed to establish that he sustained an injury in the course of his employment, and that he was not entitled to benefits under the North Dakota Workmen's Compensation Act.

On 14 March 1977 Merlin A. Steele asked the Bureau for a rehearing and stated that an injury was sustained on his right elbow in June of 1973 while lifting heavy beer cases during the course of his employment. On 24 March 1977 the Bureau, in response to claimant's letter of 14 March, in substance stated that because he now claims his injury stemmed from an incident in 1973, the claim is older than one year from date of injury, and that the Bureau is not liable for the current disability.

On 1 April 1977 Mr. Steele replied by stating:

"Regarding the incident in 1973, I do not feel that it is in any way related to the present injury. Since the doctor for my present injury was aware that sometime in the past I had xrays taken of my arm, it was his request to view them. Since the time that the xrays were taken in 1973, the doctor stated there was nothing wrong, and I have had no problem from that time prior to January 10th, 1977, I can see no reason this should have any bearing on the present injury or what reason it was brought about."

On 6 April 1977 the counsel for the Bureau wrote to Merlin A. Steele stating, in part, as follows:

"Then, in your April 1, 1977, letter you state: 'Regarding the incident of 1973, I do not feel that it is in any way related to the present injury.' You are the one who mentioned the 1973 injury, not the Bureau. Obviously you felt the two were related.

"In any event, there is still no medical substantiation that your present problem is due to a work related injury. Until such information is forthcoming, the Bureau's decision must remain the same. If you have any questions or comments, please contact me."

On 7 June 1977, the Bureau received a report from Dr. Hogan pertaining to the 1973 examination which stated, among other things:

"Xrays were taken of the right elbow at that time [1973] but did not show any definite fracture or other pathology related to an acute injury."

On 10 June 1977 the attorney, on behalf of the claimant, wrote to the Bureau stating:

"If you agree with me, please reopen and award compensation in this case. We are arranging an appointment for the claimant to determine permanent partial disability. If you will not award compensation prior to a hearing, please consider this a request for one."

On 15 June 1977 counsel for the Bureau wrote a letter to Mr. Buchanan, the attorney for Mr. Steele, concluding with the following:

"If you are requesting a hearing, what would you hope to add to the record through a hearing which is not presently in the file or which could not be gathered in some other way?"

On 24 June 1977 claimant's attorney wrote to the Bureau stating:

"I think we can show from the testimony of two physicians that the claimant's elbow condition occurred in the course of, and arose from his employment. As you know, we do not have to prove in North Dakota that an injury arose from the employment, only that it occurred during the course of it."

The letter concluded by saying:

"I am going to be out of the country until the week of July 25, but, if you cannot pay this claim, I would request that you set the matter for hearing in the early part of August, or, serve a denial of reconsideration on me and the claimant, and we will then file our notice of appeal."

On 12 July 1977, Bureau's counsel wrote to claimant's attorney as follows:

"After your last two letters I and the Commissioners have absolutely no idea what you are trying to say. Why don't you give me a call when you return and we can probably get this straightened out."

On 12 October 1977 claimant's attorney wrote to the Bureau stating that he thought it would be only fair for the Bureau to consent to an oral examination of Dr. Reiswig by deposition to see if his testimony would be as equivocal as his report to the Bureau had seemed to be. In a postscript, claimant's attorney stated, "Could we depose the claimant at the same time?"

On 13 October 1977, Bureau's counsel wrote to claimant's attorney in which he reviewed prior correspondence and concluded:

"After requesting in your previous letter that the Bureau depose Drs. Reiswig and Hogan, you now write requesting that the Bureau depose only Dr. Reiswig. Even if the Bureau granted your request for deposition, it would certainly depose Dr. Hogan as well who would indicate that Mr. Steele had this condition in 1973. In which case the Bureau would then dismiss because of his failure to submit a claim in one year. There would be *absolutely no sense* to that.

"Therefore, if you wish the Bureau to issue a denial of a rehearing so that you can appeal to the District Court, the Bureau will do so. However, you have obviously not demonstrated any legitimate reasons for a formal hearing and/or depositions in this case." [Emphasis in original.]

On 14 October 1977 claimant's attorney wrote and stated that the Bureau should enter and serve its denial of rehearing, whereupon the Bureau on 20 October 1977 entered an order denying petition for rehearing. The appeal to the district court followed. The district court affirmed the decision of the Bureau, but only after allowing the claimant an opportunity, which he did not take, to submit additional medical evidence why the claim should be accepted.

The claimant, Steele, on appeal, stated the following issues:

1. Are the Bureau's findings of fact supported by a preponderance of the evidence?

2. Is the medical evidence speculative and conjectural?

The Bureau stated the issue differently, as follows:

> Whether the North Dakota Workmen's Compensation Bureau was correct in denying benefits for an alleged employment injury to the claimant.

There is an additional critical issue on the question whether or not the Bureau in denying Steele an evidentiary hearing was acting in accordance with law.

On appeal we review the decision of the agency rather than the decision of the district court. This principle of limited review, based upon the doctrine of constitutional necessity, was reached in *Geo. E. Haggart, Inc. v. North Dakota Workmen's Compensation Bureau,* 171 N.W.2d 104 (N.D.1969), under the then-existing provisions of § 28–32–21, NDCC, which provided that:

> "The judgment of the district court in an appeal from the decision of an administrative agency may be reviewed in the supreme court on appeal in the same manner as any case tried to the court without a jury may be reviewed . . ."

Section 28–32–21, NDCC has since been amended by Chapter 284 of the 1977 Session Laws, which became effective 1 July 1977 and now provides as follows:

> "The judgment of the district court in an appeal from a decision of an administrative agency may be reviewed in the supreme court on appeal in the same manner as provided in section 28–32–19.
> . . . ."

Section 28–32–19, NDCC, as amended, sets forth the standard for review of the agency's decision in the district court.[1] The only rational legal conclusion that can be reached from the amendment and the *Haggart* case is that on appeal the Supreme Court reviews the administrative agency's decision and not the district court's decision except as to limited permissible action taken by the district court in such matters as attorney's fees on appeal and the taking of additional testimony as provided for in § 65–10–03, NDCC, as amended, § 65–10–01, as amended, and § 28–32–18. Furthermore, the standard of review in the Supreme Court is the same as the standard under which the district court reviews the decision. (§§ 28–32–21, 28–32–19, NDCC).

Accordingly, we review the decision of the Bureau and consider these issues raised which need to be resolved.

In considering the issues raised by the claimant whether or not the Bureau's findings are supported by the preponderance of the evidence, we note that § 28–32–19, NDCC, as amended in 1977, requires the Bureau's findings of fact to be supported by a preponderance of the evidence. The immediate previous standard based on the provisions of § 28–32–19, prior to the 1977 amendment and case law, *Bank of Rhame*

---

1. Section 28–32–19, NDCC:
   The court shall try and hear an appeal from the determination of an administrative agency without a jury and the evidence considered by the court shall be confined to the record filed with the court. If additional testimony is taken by the administrative agency or if additional findings of fact, conclusions of law, or a new decision shall be filed pursuant to section 28–32–18, such evidence, findings, conclusions, and decision shall constitute a part of the record filed with the court. After such hearing, the court shall affirm the decision of the agency unless it shall find that any of the following are present:
   1. The decision or determination is not in accordance with the law.
   2. The decision is in violation of the constitutional rights of the appellant.
   3. Provisions of this chapter have not been complied with in the proceedings before the agency.
   4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
   5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
   6. The conclusions and decision of the agency are not supported by its findings of fact. If the decision of the agency is not affirmed by the court, it shall be modified or reversed, and the case shall be remanded to the agency for disposition in accordance with the decision of the court.

infra and predecessors, was substantial evidence.[2]

Our court, in *Benzmiller v. Swanson,* 117 N.W.2d 281 (N.D.1962), relying upon *Barkow v. Donovan Wire & Iron Co.,* 190 Mich. 563, 157 N.W. 55 (1916), defined preponderance of evidence as "evidence more worthy of belief," or "the greater weight of the evidence" or "testimony that brings the greater conviction of truth."

■ The judicial definitions of "preponderance of evidence" as found in Vol. 33 of Words and Phrases are substantially similar to the definition in *Benzmiller, supra,* and contain some additional factors such as "is more convincing" or "has the probability of truth." See also, 32A C.J.S. *Evidence* § 1021, p. 648, and 30 Am.Jur.2d *Evidence* § 1164, p. 338. We believe the foregoing definitions are adequate for our purposes.

If the preponderance of evidence is the standard of review to be applied on appeal, and if the Bureau's findings of fact will be judged whether or not they are supported by the preponderance of evidence, does it not necessarily follow or require that the claimant also prove his claim before the Bureau by the preponderance of the evidence? Or, to phrase the question another way, may the standard before the Bureau be substantially different than the standard on appeal? If the standard before the Bureau were equal or greater than the standard on review no serious problem would be envisioned, but would it be fair to require the claimant to meet a higher standard before the Bureau than the standard by which the Bureau's findings of fact were reviewed on appeal?

■ The order of dismissal is dated 10 March 1977. The petition for rehearing was denied on 20 October 1977. The preponderance of evidence standard became effective 1 July 1977. This raises the question, does the preponderance of evidence standard on review apply to a claim which was heard and initially decided by the Bureau prior to the effective date? We think not. The case law developed as a result of the repeal of the de novo review statute is not in opposition to the conclusions reached herein. See *Farmers Ins. Exchange v. Nagle,* 190 N.W.2d 758 (N.D.1971), and *Wildfang Miller Motors, Inc. v. Rath,* 198 N.W.2d 210 (N.D.1972). In fairness to all of the parties concerned, including the employer, we conclude that to apply a substantially different standard on appeal than the one under which the claim was initially considered and decided would be unfair and unjust to all parties concerned. We therefore conclude that because the preponderance of evidence standard of review was not in effect at the time the Bureau made its findings of fact it does not apply to this case as presently submitted even though the petition for rehearing was denied after the effective date of the preponderance of evidence standard. It necessarily follows that the substantial evidence standard on review applies to this claim as it is presently submitted.

In *Application of Bank of Rhame,* 231 N.W.2d 801 (N.D.1975), we reaffirmed the previous substantial evidence rule and also adopted the substantial evidence definition

---

**2.** It is interesting to note that in 1926, prior to the Administrative Practices Act, Ch. 28–32, 1943 RC, our Court in *Dehn v. Kitchen,* 54 N.D. 199, 209 N.W. 364 (1926), stated that the burden is upon the claimant to prove by a *preponderance of the evidence* that the injury for which the compensation is claimed was received in the course of the employment. See also *Kamrowski v. North Dakota Workmen's Compensation Bureau,* 64 N.D. 610, 255 N.W. 101 (1924). In 1941 the Legislature enacted the Administrative Practices Act, Ch. 28–32. The code revisers of the 1943 Code, on their own initiative, inserted language in the Workmen's Compensation Act (Sec. 65–1001) making appeals from the Workmen's Compensation Bureau subject to Sec. 28–2119, Revised Code 1943, which provided for the substantial evidence standard. In 1977 the Legislature amended Sec. 28–21–19, NDCC, providing for the preponderance of evidence standard. It seems we have now come full cycle. However, it should be noted that until 1971 the Supreme Court on appeal reviewed cases on a de novo basis. This may have accounted for some of the discussions in the Workmen's Compensation cases at that time, even though there was a question whether or not de novo fully applied to administrative agency decisions, and therefore those discussions may not be appropriate under the present situation.

in *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966), which is as follows:

". . . 'substantial evidence' [is] . . . 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. [Citations omitted.] It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' [Citations omitted.] This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. [Citations omitted.]"

Volume 32A C.J.S. *Evidence* § 1016, p. 629, states that:

"Substantial evidence is evidence which, if true, has probative force on the issues, and from which the trier of fact can reasonably decide the case on the fact issues . . . ."

In addition to the foregoing, we must consider who has the burden of proof.

■ A claimant seeking benefits from the Workmen's Compensation Fund has the burden of establishing his right to participate therein. *Kuntz v. North Dakota Workmen's Compensation Bureau,* 139 N.W.2d 525 (N.D.1966), and its predecessors. The Court, in *Kuntz,* also stated there must be positive evidence showing that the disability was fairly traceable to the injury suffered by the employee and that the injury actually had to be in the course of employment. The Court further observed that testimony conditioned by such words as "I feel," "I assume," "my impression," are not sufficient to meet the burden of proof. The Court in substance stated that any award based upon such testimony would be based upon surmise, conjecture, and mere guesswork, and would not meet the burden of proof.

■ Based solely upon the limited evidence in the record, such as it is, we would conclude that the claimant has not met his burden of proof and that the findings of fact of the Bureau are supported by substantial evidence. However, because of the posture of this case there are other issues which need to be considered and resolved.

In *Pfeiffer v. North Dakota Workmen's Compensation Bureau,* 57 N.D. 326, 221 N.W. 894 (1928), the Court, after first noting that the burden is upon the claimant to prove his claim by the preponderance of the evidence, which is not sustained by mere surmise or conjecture [*Pace v. North Dakota Workmen's Compensation Bureau,* 51 N.D. 815, 201 N.W. 348 (1924) and *Dehn v. Kitchen,* 54 N.D. 199, 209 N.W. 364 (1926)], significantly observed that:

"Naturally there is a good deal of speculation in regard to some diseases and afflictions—their origin and development. It is not necessary that the testimony adduced be free from all speculation. In the case of *Brown v. Bureau,* 55 N.D. 491, 214 N.W. 622, the physician testifying for the plaintiff stated that the injury she received was due to her work as a telephone operator, partly because he could find no other inducing cause. To this extent it may be said that his opinion was more or less speculative. But he also stated that the injury was the probable and natural result of the work."

The Court in *Pfeiffer* also quoted from a Minnesota case (*Walker v. Minnesota Steel Co.,* 167 Minn. 475, 209 N.W. 635) which stated that:

"An actual aggravation of an existing infirmity, caused by an accident in the course of employment, is compensable, even though the accident would have caused no injury to a normal person."

With the foregoing in mind, we cannot disregard Dr. Reiswig's letter of 9 March 1977 wherein he expressed his view that "with repeated use of his elbow in lifting heavy beer cases a chip of cartilage could have come loose" and that "It is not unreasonable to associate his occupation with the problem in his elbow." In addition, there is the unanswered probability that the work may have aggravated a pre-existing condi-

tion. These are matters which are difficult to present and resolve without a hearing where the witness may be examined and cross-examined.

This brings us to the important overriding issue whether or not the Bureau properly denied the claimant a hearing to present oral testimony, cross-examine witnesses, etc.

In *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and in *Wheeler v. Montgomery*, 397 U.S. 280, 90 S.Ct. 1026, 25 L.Ed.2d 307 (1970), the United States Supreme Court held that an individual receiving financial aid under the welfare program or a recipient of old-age benefits was entitled to an evidentiary hearing at which the recipient could personally appear to offer oral evidence and confront and cross-examine the witnesses against him before benefits could be terminated, to satisfy the due process clause of the Fourteenth Amendment.

But, in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the United States Supreme Court in the termination of disability benefits under the Social Security Act held that an evidentiary hearing was not required prior to making an initial determination of terminating claimant's disability benefits and that the existing administrative procedures allowing an initial determination without an evidentiary hearing fully comported with due process and the right of the private and governmental interests involved. The Court significantly recognized that the social security law provided that the recipient of benefits where benefits were terminated could request a reconsideration which ultimately leads to an evidentiary hearing and, in effect, held that because the recipient declined to request reconsideration, the initial decision determining benefits was a "final decision" subject to review by the courts under certain conditions.

The Court stated:

"More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

The Court then reviewed the appropriate statutory provisions applying to the social security procedures and observed that:

"If, as is usually the case, the SSA accepts the agency determination it notifies the recipient in writing, informing him of the reasons for the decision, and of his right to seek de novo reconsideration by the state agency. 20 CFR §§ 404.907, 404.909 (1975). Upon acceptance by the SSA, benefits are terminated effective two months after the month in which medical recovery is found to have occurred. 42 U.S.C. (Supp. II) § 423(a) (1970) ed. Supp. III [42 USCS § 423(a)]. "If the recipient seeks reconsideration by the state agency and the determination is adverse, the SSA reviews the reconsideration determination and notifies the recipient of the decision. He then has a right to an evidentiary hearing before an SSA administrative law judge. 20 CFR §§ 404.917, 404.927 (1975). The hearing is nonadversary, and the SSA is not represented by counsel." [3]

In the final analysis, it is apparent that the *Eldridge* case is not dispositive of the issues we have under consideration here because in *Eldridge* the claimant declined to take advantage of the reconsideration provision and the ultimate opportunity for an evidentiary hearing, whereas in the present case the claimant in effect sought a reconsideration and requested a hearing. There

3. This provision is applicable to either a termination of benefits or to an application for benefits.

is a further distinguishing factor, the claimant in the *Eldridge* case was notified of his right to seek reconsideration which would ultimately lead to an evidentiary hearing but elected to treat the decision as final and appealed to the court challenging the constitutionality of the decision-making process which permitted making an initial decision without an evidentiary hearing.[4] We must therefore express strong reservations as to the application of the *Eldridge* case to this case.

■ The initial determination treated as a "final decision" in the *Eldridge* case is somewhat comparable to the authority of the Bureau to make a determination under the provisions of the Rules of Procedure of the Workmen's Compensation Bureau[5] Rules 92–01–02–03, 92–01–02–04 and 92–01–02–05 and § 28–32–08, NDCC, which provides, in part, as follows:

". . . Provided, however, that the commissioners of the workmen's compensation bureau may make determinations without the giving of the notice herein provided for. This provision shall not be construed to relieve the commissioners of the workmen's compensation bureau of the requirements of section 28–32–13 of this chapter [which requires the making of findings of fact, conclusions of law and decision]." [Underscoring ours.]

4. The court adopted the *Goldberg v. Kelly* standard for an evidentiary hearing which included the following elements: (1) timely and adequate notice detailing the reasons for the proposed termination; (2) an effective opportunity for the recipient to defend by confronting any adverse witness and by presenting his own arguments and evidence orally; (3) retain counsel if desired; (4) an impartial decision-making; (5) a decision resting solely on the legal rules and evidence adduced at the hearing; and (6) a statement of reasons for the decision and the evidence relied on.

5. Rule 92–01–02–03. INFORMAL HEARING. Upon receipt of a claim, the bureau shall investigate the claim, review the file and make a determination. Such action shall constitute an informal hearing pursuant to North Dakota Century Code section 28–32–08, no notice of such hearing need be given. Any decision arrived at as a result of a informal hearing, shall be made pursuant to North Dakota Century Code section 28–32–13.

The Bureau's reliance on the above underscored language in § 28–32–08, NDCC, as amended by Ch. 219, 1945 S.L., for not holding a formal hearing (evidentiary hearing) in this instance is not well founded. The underscored language does not excuse or exempt the Bureau from holding a formal hearing, it merely exempts the Bureau from the requirement of providing the parties to a matter before the Bureau with "a written specification of the issues" before holding a hearing or making an investigation or considering a claim. *State for Benefit of, etc., Workmen's Compensation Bureau v. Broadway Investment Co.*, 85 N.W.2d 251 (N.D.1957). The underscored language does not dispense with the other provisions of Ch. 28–32, NDCC, particularly § 28–32–05(2), NDCC, which provides:

"The following rules of procedure shall be observed by all administrative agencies in proceedings in which the same are applicable:

2. At such hearing, the person against whom the proceedings have been instituted shall be afforded the same opportunity to present evidence and to examine and cross-examine witnesses as is permitted to parties to an action in the district court."

■ The North Dakota legislature in enacting Ch. 28–32, NDCC, the Administra-

Rule 92–01–02–04. REHEARING—FORMAL HEARING: Following an informal hearing, the bureau may set a rehearing on the claim pursuant to the North Dakota Century Code section 28–32–14. Such a rehearing shall be a formal hearing on the claim.

Rule 92–01–05–05. NOTICE OF FORMAL HEARING—SPECIFICATION OF ISSUES. When a claim is assigned for formal hearing, the bureau, at least twenty days prior to such hearing, shall notify in writing all interested parties of the time and place of the hearing. The twenty-day notice may be dispensed with upon agreement by the parties. The bureau shall attach to the notice of hearing a written specification of the issues which are to be considered and determined, and a full opportunity shall be afforded the parties to present evidence and be heard. Formal hearings will be held at the office of the bureau, at the county seat of the county in which the injury occurred, or at such other place as may be agreed upon by the parties.

tive Agencies Practice Act, set out the due process requirements for administrative agencies.

■ The provisions of the Administrative Agencies Practice Act are made fully applicable to the Workmen's Compensation Bureau pursuant to the provisions of § 65–02–11, NDCC, as amended.

■ Our analysis of Ch. 28–32 compels us to conclude that a formal hearing is required whenever the administrative agency acts in a quasi-judicial capacity unless the parties either agree otherwise or there is no dispute of a material fact.

■ We must also express reservations upon the validity of Rule 92–01–02–04 if the term "may" as found in the Rule is construed and relied upon by the Bureau to the effect that a formal hearing (evidentiary hearing) need be held only at the volition of the Bureau. A rule may not exceed statutory authority or supersede a statute. *Medical Properties Inc. v. North Dakota Board of Pharmacy*, 80 N.W.2d 87 (N.D. 1956). Our doubts would be removed, however, if Rule 92–01–02–04 were construed to mean that whenever the Bureau decided to proceed initially with a formal hearing or has doubts regarding the sufficiency of the record produced at an informal hearing it may elect to have a formal hearing; or that whenever a party, including the claimant, is aggrieved by the result of an informal hearing and seeks a rehearing, the Bureau must conduct or hold a formal hearing if a material fact is in dispute. We so construe this rule to preserve its validity.

■ We are not ruling out the use of an informal hearing (a non-evidentiary hearing) for making an initial determination provided the Bureau will afford the claimant a formal hearing (an evidentiary hearing) upon request if a dispute of a material

fact exists, as contemplated by the due process requirements set out by the legislature in Ch. 28–32, NDCC.

■ The claimant in North Dakota does not have subpoena power but may compel the attendance of a witness by requesting the Workmen's Compensation Bureau to issue the subpoena, etc. The same is true regarding the taking of depositions. Depositions may be taken or a hearing may be conducted in a doctor's office or at any other appropriate place for the convenience of the parties or witnesses. In this regard the Bureau has considerable latitude.

We believe the Workmen's Compensation Act, the rules adopted pursuant to the act, and the provisions of Ch. 28–32 must be construed together, and when so construed produce the result generally that whenever the Bureau has made an initial determination disallowing a claim based on a record made at an informal hearing, the claimant, upon request, is entitled to an evidentiary hearing, whether designated as a formal hearing or rehearing, if there is a dispute on material facts. The Bureau, on its own decision, may also hold a formal hearing.

Even though we are not reviewing the district court's decision, we, nevertheless, note that the district court was obviously concerned about the claimant not having had an opportunity to participate in an evidentiary hearing. This apparently accounted for the district court allowing the claimant time to present additional evidence in support of the claim, which he declined to do.

In the instant case, the claimant before the Bureau sought either a hearing, a rehearing, or the taking of the deposition of one of the doctors and gave his reasons. The Bureau denied this request.[6]

---

**6.** The University of Pennsylvania Law Review 123 (1975), p. 1265, contains a very interesting article written by Henry J. Friendly, Judge of the United States Court of Appeals for the Second Circuit, entitled *Some Kind of Hearing*. After a long discussion, he concludes that the problem is always the same, namely, to devise procedures that are both fair and feasible, and

that he applauds the court's basic initiative with respect to administrative hearings, but also believes that the time has come for some new thinking and also for some tidying-up of the decisions already made.

See further comments by Davis, Administrative Law of the Seventies, supplementing the Administrative Law Treatise issued June 1976,

■ After a review of the communications and the reasonable inference to be drawn therefrom, between the Bureau and the claimant, we conclude that the Bureau erred in denying the request for a hearing or the taking of the deposition of the doctor in this case.

We believe the adversary concept employed in our judicial system has only limited application to claims for benefits. The Bureau in carrying out its statutory duties acts in a quasi-judicial capacity and should be primarily concerned with the proper, fair, and just determination of any claim submitted. In making this observation we are fully cognizant that the existing case law places the burden upon the claimant, but nevertheless the Bureau should not place itself in a true or full adversary position to the claimant. In resolving an issue the Bureau should take the position of an administrative agency acting in a quasi-judicial capacity even though it also acts as an investigative body. We are not concluding that whenever a claimant asks for a hearing or a rehearing or asks for the taking of a deposition with regard to the factual situation that the Bureau must accede to such wishes. Each case must be judged on its merits. Under the facts in this case we conclude that a remand is appropriate to satisfy due process as outlined by the legislature in Ch. 28–32, NDCC. Accordingly, this claim is remanded to the Bureau for the purpose of conducting an evidentiary hearing.

The district court, in addition to affirming the decision of the Bureau, also ordered the payment of attorney fees of $500.00 to the claimant's attorney. The Bureau cross-appealed from this order.

■ The claimant contends that the cross-appeal was not timely in accordance with the provisions of Rule 4(a), North Dakota Rules of Appellate Procedure, and that the cross-appeal was filed on 3 May 1978, more than 14 days after the filing of the claimant's notice of appeal, which was filed on 18 April 1978. Service of notice, etc.,

was by mail. Under Rule 26(a), NDRAppP, the day of the event or default from which the designated period of time begins to run is not included. Furthermore, Rule 26(c) provides, in substance, that when service by mail is permitted and made, three days shall be added to the prescribed period. In applying these concepts to the present situation we conclude that the cross-appeal was filed within the required time and is properly before us.

The attorney fees were apparently allowed by the district court pursuant to the provisions of § 65–10–03, NDCC, which, as pertinent to the issue here, provides as follows:

"The cost of the appeal, including an attorney's fee for the appellant's attorney, shall be set by the trial judge and taxed against the bureau. The bureau shall pay such attorney's fee from the bureau general fund. The amount of such attorney's fee shall be determined in the same manner as prescribed by rule of the bureau for attorney fees, adopted pursuant to this title, and the amount of the attorney's fee already allowed in proceedings before the bureau shall be taken into consideration."

In *Feist v. North Dakota Workmen's Compensation Bureau*, 80 N.W.2d 100 (N.D. 1956), the Court held that § 65–10–03, as it then existed, permitted an award of attorney fees as costs only, and that attorney's fees are allowable only to the party in whose favor costs may be taxed.

The provisions of § 65–10–03, NDCC, as they existed in the *Feist* case, provided as follows:

"The cost of appeal, including a reasonable attorney's fee to the claimant's attorney, shall be fixed by the trial judge and taxed against the bureau provided, however, that in the event the appeal is taken from an award of the bureau, the trial judge shall not allow attorneys' fees in excess of twenty per cent of the amount allowed on appeal over and above

chapter 7, on the requirement of opportunity to be heard, and the 1978 Supplement to Adminis-

trative Law Treatise, sections 700–1 to 700–13, requirement for hearing.

the award given by the bureau in its final action prior to appeal ........"

In comparing the provisions of § 65–10–03 as it existed in the *Feist* case with the provisions of that section as amended and currently in effect, we conclude that attorney's fees are still considered as costs on appeal. The rule of law announced in the *Feist* case still applies and attorneys' fees may be allowed as costs on appeal, which means the attorney's fees are allowed only if the attorney is representing a prevailing claimant. We must therefore conclude that the trial court was in error in allowing attorney fees because the claimant did not prevail on the appeal. Any other construction would invite frivolous appeals.

However, because the claimant has prevailed in this court to the extent of obtaining an evidentiary hearing, he is entitled to attorney's fees in accordance with the provisions of § 65–10–03, NDCC, as amended and presently in effect.

This case, accordingly, is remanded to the district court for the limited purpose of setting attorney fees on this appeal and is further remanded to the Workmen's Compensation Bureau for the purpose of conducting an evidentiary hearing. To make the evidentiary hearing meaningful and fair it will be necessary for the Bureau to subpoena witnesses, including the doctors who may provide relevant evidence for the resolution of the issues raised in Steele's claim. If another appeal is taken the Bureau's findings of fact will be subject to the preponderance standard.

Costs are assessed against the Bureau in favor of Steele.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VandeWALLE, JJ., concur.