Russell D. ROBERT, Claimant
and Appellant,

v.

NORTH DAKOTA WORKMEN'S
COMPENSATION BUREAU,
Respondent and Appellee.

Civ. No. 10143.

Supreme Court of North Dakota.

July 1, 1982.

Arne F. Boyum, Jr., Rolla, for claimant
and appellant, submitted on brief.

Richard J. Gross, Asst. Atty. Gen., Bismarck, for respondent and appellee North Dakota Workmen's Compensation Bureau, submitted brief.

VANDE WALLE, Justice.

Russell Robert sought compensation from the Workmen's Compensation Bureau for a back injury allegedly sustained while he was working for Munro Contractors in Rolla. The Bureau denied his claim. Additional evidence was submitted and considered but the Bureau issued an order affirming the dismissal. An appeal to the district court followed. After a series of procedural matters, the appeal to the district court was dismissed. An appeal to the Supreme Court of that dismissal was withdrawn when the Bureau agreed to reopen the case. The Bureau affirmed its prior order and the district court affirmed the Bureau's decision. This appeal followed. We affirm.

I

A claimant has the burden of proving his right to participate in benefits available from the Bureau. Sec. 65–01–11, N.D. C.C.; *Inglis v. North Dakota Workmen's Comp. Bureau*, 312 N.W.2d 318, 322 (N.D. 1981). The claimant must show that he or she was actually injured in the course of employment and that the ensuing disability is causally connected to the employment injury. *Claim of Bromley*, 304 N.W.2d 412, 415 (N.D.1981), citing *Kuntz v. North Dakota Workmen's Compensation Bureau*, 139 N.W.2d 525 (N.D.1966).

We review the findings of the Bureau and not the findings of the district court. *Davis v. North Dakota Workmen's Comp. Bureau*, 317 N.W.2d 820 (N.D.1982).

We are bound to affirm the decision of the Bureau unless its findings of fact are not supported by a preponderance of the evidence or its conclusions of law are not supported by its findings of fact. Sec. 28–32–19, N.D.C.C. The "preponderance of the evidence" standard has been defined as "evidence more worthy of belief" or "the greater weight of the evidence" or "testimony that brings the greater conviction of truth." *Gramling v. North Dakota Workmen's Comp. Bureau*, 303 N.W.2d 323, 328 (N.D.1981), quoting *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 219 (N.D.1979).

## II

Robert filed his claim on June 4, 1979. He reported that he injured his lower back on August 10, 1978, while "setting steel I-beams without the aid of proper equipment." Robert's employment with Munro ended on May 21, 1979. Robert's employer, in completing the employer's report, noted: "[Robert] has complained about his back before this incident. Lifting this I Beam may have aggravated it."

Robert first sought medical attention on December 5, 1978. The physician, Dr. Vigesaa, noted a "probable work injury." Vigesaa's tentative diagnosis was "L–S strain or prostatis." After treatment for prostatis failed to alleviate Robert's pain, Vigesaa referred him to Dr. MacLennan, a urologist. In a letter to Vigesaa, Dr. MacLennan noted that Robert "gives a long history of intermittent backache over the past twelve years." MacLennan stated that "[t]his backache has been considerably more bothersome in the past nine to twelve months." MacLennan concluded that Robert did not "have enough symptoms to establish a diagnosis of prostatis" and referred him to a neurosurgeon, Dr. Schmelka, in the hope of discovering "some other cause for his back pain." On May 31, 1979, Schmelka wrote to Vigesaa: "We have a story of low back pain which dates back to when he was 14 years old off and on." He commented that family problems "may be contributing to . . . [Robert's] low back pain." Schmelka's diagnosis was "chronic low back sprain."

Schmelka noted that Robert "works as a carpenter and does much heavy lifting" and that the "pain is worse at the end of the day."

In November of 1979 Robert saw Dr. Mattheis. Mattheis's records include the following:

"This young man states that about last August he was working for a small contractor and it was necessary to move some I beams around and he hurt his back. It really didn't give him very much trouble until it started getting cold in November and December and since then he has had a lot of low back discomfort aggravated by any kind of work activity. . . . Bending aggravates it. Any kind of lifting aggravates it."

Mattheis ordered a lumbar myelogram. This showed "some narrowing of the distal lumbar sac but no evidence of disc herniation." Mattheis's clinical resume concludes: "We do not know the etiology for [Robert's] back pain . . ."

Subsequently, Robert was treated by Dr. Lifson. His diagnosis was facet joint disease and mechanical low-back pain syndrome.

Robert's history of "intermittent back discomfort going back to 10 to 15 years ago," is noted in Lifson's records. He also notes that Robert "wasn't disabled with low back pain until August of 1978. At that time, he was apparently injured at work while lifting steel beams without proper equipment."

The "attending physician's report" completed by Dr. Vigesaa on June 11, 1979, described the injury: "Patient was setting steel beams, experienced low back pain." In a letter dated July 20, 1979, Vigesaa wrote that Robert's disability "is probably indeed work-related." In response to a letter from Robert's attorney, Dr. Lifson wrote on February 20, 1981:

"As far as your inquiry is concerned you have to understand that all my history is based upon data provided by Mr. Robert. According to his statement he was involved in a work-related injury while lifting heavy equipment in an office in 1978.

Certainly this type of physical activity could result in appearance of low back pain. However, as you see in the history and physical the patient had intermittent back discomfort going back to 10–15 years ago. I think that the work-related accident which occurred in August of 1978 could have been a factor aggravating and accentuating his disability."

As a matter of law, the Bureau concluded (1) that the claimant has failed to prove that he suffered an injury by accident arising out of and in the course of his employment; (2) that the claimant has failed to prove that his condition is causally related to an employment injury; and (3) that the claimant has failed to prove that he is entitled to benefits in connection with his condition.

1. The Bureau made these findings of fact:

"I.
"That on June 5, 1979, the claimant above named filed a claim with this Bureau for compensation and/or medical expenses resulting from an alleged injury on August 10, 1978.

"II.
"That on August 10, 1978, the claimant was employed by Munro Contractors, Inc., Rolla, North Dakota, as a carpenter.

"III.
"That the claimant alleges that he pulled muscles in his lower back when setting steel piping without the aid of proper equipment in the course of his employment.

"IV.
"That on his application for benefits, the claimant indicated that he did not quit work as the result of this alleged injury until May 21, 1979.

"V.
"That the claimant did not seek medical attention due to an alleged August 1978, injury until December 5, 1978.

"VI.
"That the claimant's problem with his low back pain was initially thought to be due to prostatitis, and he was treated accordingly until May 19, 1979.

"VII.
"That, according to medical evidence of May 14, 1979, the claimant gave a long history of intermittent backache over the past 12 years which back pain had been considerably more bothersome over the past nine to twelve months. No injury as the cause of his problem was mentioned, and it was determined that he did not have enough symptoms to establish a diagnosis of prostatitis.

"VIII.

The basic facts[1] the Bureau relied upon to support the denial of benefits are: (1) Robert's delay in seeking medical attention and quitting work; (2) Robert's history of low-back pain; (3) the failure of the May 1979 medical evidence to mention work-related activity as the cause of Robert's condition; (4) the medical evidence including the neurosurgeon's statement that he could find nothing objective, the results of the myelogram, and the ultimate diagnosis; and (5) prior complaints to his employer of back problems.

In challenging the Bureau's decision, Robert contends that the denial of his claim was based primarily on the fact that there was a four-month delay between his first visit to the doctor and the alleged injury.

"That, according to medical evidence of May 31, 1979, the claimant again gave a history of low back pain which dated back to age 14. Interpersonal friction at home was determined to be a contributory problem. He was diagnosed as having chronic low back sprain and decreased activity was suggested. No work-related activity was documented as the cause of his condition.

"IX.
"That in November, 1979, the claimant was examined by a neurosurgeon who could find nothing of an objective nature.

"X.
"That a myelogram was performed in December, 1979, which showed some narrowing of the distal lumbar sac but no evidence of disc herniation.

"XI.
"That in December 1979, the claimant's physician noted that the etiology for the claimant's back pain was unknown.

"XII.
"That in April 1980, the claimant was referred to a low back clinic where his condition was diagnosed as facet joint disease and mechanical low back pain syndrome.

"XIII.
"That, according to the employer, the claimant complained of low back problems prior to the alleged date of injury.

"XIV.
"That there is no substantiation that the claimant's back problems were caused by an industrial injury.

"XV.
"That, according to medical evidence, the claimant's back problem is chronic in nature and is a result of an ongoing process since approximately age 14."

We agree that the failure to seek immediate medical attention should not automatically preclude compensation. Procrastination is a common response to pain. In this case, however, we think that the additional evidence, including Robert's lengthy history of back pain and the medical diagnosis, provides sufficient factual support for the Bureau's conclusions. Robert's contention that a causal link between an employment injury and his disability exists "because there is no other rational explanation for his lower back pain" also fails in view of the evidence.

In *Davis v. North Dakota Workmen's Comp. Bureau, supra,* we sustained a decision of the Bureau which terminated benefits because Davis no longer was disabled. We stated:

"It is quite proper for the Bureau to take the evidence as a whole, evaluate it and arrive at a conclusion consistent with the overwhelming weight of the medical evidence." 317 N.W.2d at 823.

We have reviewed the entire record in this case and we conclude that the Bureau's findings of fact are supported by the preponderance of evidence and that its conclusions are sustained by the factual findings.

AFFIRMED.

ERICKSTAD, C. J., and SAND, PAULSON and PEDERSON, JJ., concur.