**Dolly M. ROBERTS, Appellee,**

v.

**NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, Appellant.**

**Civ. No. 10213.**

Supreme Court of North Dakota.

Nov. 24, 1982.

Ella Van Berkom, Minot, N.D., for appellee; argued by Ella Van Berkom, Minot, N.D.

Joseph F. Larson, II, Asst. Atty. Gen., North Dakota Workmen's Compensation Bureau, Bismarck, N.D., for appellant; argued by Joseph F. Larson, II, Asst. Atty. Gen., Bismarck, N.D.

ERICKSTAD, Chief Justice.

This is an appeal by the North Dakota Workmen's Compensation Bureau (the Bureau) from a judgment of the District Court of Benson County, dated March 9, 1982, reversing the Bureau's order, dated January 26, 1981, which denied Dolly M. Roberts' claim for benefits. We affirm the judgment of the district court.

Dolly commenced employment as a carpenter's helper for Everett Krohnke, owner of the Serve and Save Lumber Company at Drake, North Dakota, during April, 1978. During the week of May 5, 1978, Krohnke instructed Dolly to insert fiberglass insulation around window sills located in an apartment building which Krohnke owned and was at that time refurbishing. Krohnke showed Dolly how to tear the fiberglass insulation with her hands and then stuff it between the window sill and the framing. While performing this task, Dolly wore no protective clothing or gloves.

There is a dispute as to the duration of Dolly's work with the fiberglass insulation. Dolly testified that she worked one day with the fiberglass for approximately six hours. In a letter written to the Bureau, Krohnke stated that Dolly worked only one day for approximately one and one-half hours with the fiberglass. The Bureau made no finding of fact as to the amount of time that Dolly worked with the insulation.

Dolly testified that she worked in a small, enclosed room with the fiberglass and that she soon started to cough. She testified that she would leave the room in an attempt to relieve her coughing and then return again. She also testified that the fiberglass caused her skin to break out and that "I itched so bad day and night, and I hadn't slept for three days."

On the day Dolly worked with the fiberglass she went home at approximately 2:30 p.m. Although Dolly returned to work for the following two days, she no longer worked with the fiberglass insulation, but rather she assisted in placing shingles on the roof of and in carrying old plaster from the apartment building. Dolly testified that it was very dusty working around the plaster, and she stated that during those two days following her work with the insulation she felt sick and continued to cough

and itch. She testified, "I told Everett [employer], 'I cannot sleep for itching.' And he kept telling me when I returned to work each day to put on—take cold showers and then hot showers." Dolly testified that on approximately May 10, 1978, she told Krohnke that she was "so sick" she would not come back to work.

On May 13, 1978, Dolly sought medical treatment from Dr. W.J. Turkula, M.D., at the Lake Region Clinic in Devils Lake. She explained to Dr. Turkula that she had been exposed to fiberglass insulation while at work. Upon examining Dolly, Dr. Turkula diagnosed her as having "tracheobronchitis, persistent, subsequent to fiberglass exposure," and he gave her medication.

On May 15, 1978, Dolly again went to the Lake Region Clinic where she was examined by Dr. D.A. Rada for, in the doctor's words, "what appeared like laryngotracheitis with hoarse voice, and dry brassy coughing."

Dolly again sought medical attention at the clinic from T.C. Corbett on May 18, 1978, complaining that, in spite of medication, her cough persisted, it was worse particularly in the evenings, and that she was producing small amounts of greenish phlegm from her throat when she coughed. Dr. Corbett admitted Dolly to the Mercy Hospital at Devils Lake on that date with a diagnosis of "persistent tracheobronchitis subsequent to fiberglass exposure." Dolly was treated at the hospital with medication for her condition, and she improved sufficiently within four days to be discharged from the hospital on May 21, 1978, at which time she was sent home with instructions to continue taking medication for the tracheobronchitis.

Dolly was again examined by Dr. Turkula on May 30, 1978. In his written report, Dr. Turkula states that he advised Dolly to not return to her former job and also advised her that it could take an additional two or three weeks for her condition to "clear up." In that written report, to the question, "Is present disability due to an occupational disease or injury?", Dr. Turkula responded, "Yes." To the question, "Are you satisfied there is no misrepresentation or malingering in this case?", Dr. Turkula also responded, "Yes."

On June 8, 1978, Dolly filed a claim with the Bureau seeking compensation for losses resulting from her tracheobronchitis condition. The Bureau dismissed her claim during August, 1978, and a hearing was held on the matter on April 17, 1980. Subsequent to the hearing, the Bureau entered its order, dated January 26, 1981, through which it denied Dolly's claim for benefits. The Bureau found that Dolly had failed to prove that her tracheobronchitis condition was causally related to her employment with Serve and Save Lumber Company. The Bureau partially based its denial of Dolly's claim upon its finding that Dolly is not credible because she has been diagnosed as having a hysterical personality with hypochondriacal neurosis through which she has "somatic concerns and injuries which originate from her own mind."

Dolly appealed the Bureau's decision to the district court which reversed the Bureau's order. The court held that the Bureau's finding that Dolly's tracheobronchitis condition was not causally related to her employment was not supported by a preponderance of the evidence. The Bureau has appealed from the district court's judgment and on appeal has raised the sole issue of whether or not the Bureau's findings of fact upon which it dismissed Dolly's claim are supported by a preponderance of the evidence.

The standard this Court must use in reviewing a judgment of the district court in an appeal from a decision of an administrative agency is provided under Section 28–32–19, N.D.C.C., which states in part relevant to this case:

"[T]he court shall affirm the decision of the agency unless it shall find that . . . .
The findings of fact made by the agency are not supported by a preponderance of the evidence."

In *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214 (N.D.1979), this Court clarified its scope of review under the "preponderance of the evidence" standard:

"... we do not make independent findings of fact or substitute our judgment for that of the agency. We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record." 283 N.W.2d at 220.

Pursuant to Section 65–01–11, N.D.C.C., any claimant against the North Dakota Workmen's Compensation fund has the burden of proving by a preponderance of the evidence the existence of an injury for which she is entitled to participate in the fund. Pursuant to Subsection 65–01–02(8)(a), N.D.C.C., the definition of injury includes:

"Any disease which can be fairly traceable to the employment. Ordinary diseases of life to which the general public outside of the employment is exposed shall not be compensable except where the disease follows as an incident to, and in its inception is caused by a hazard to which an employee is subjected in the course of his employment. The disease must be incidental to the character of the business and not independent of the relation of employer and employee."

■ Upon reviewing the record in this case, we conclude that a reasoning mind could not have determined, as did the Bureau, that the greater weight of the evidence is that Dolly's injuries were not causally related to her employment. The Bureau made a finding that Dolly's tracheobronchitis was a "condition common to the general public" which, the Bureau's counsel explained at oral argument, means that the general public can contract tracheobronchitis by means unrelated to any particular employment environment. We further conclude that in this case a reasoning mind could only find that the greater weight of the evidence is that Dolly's injury, her tracheobronchitis condition, is fairly traceable to her employment with Serve and Save Lumber Company and, more specifically, through her work with fiberglass insulation and plaster.

The evidence is undisputed that prior to working with the fiberglass insulation Dolly felt well and that it wasn't until she began to work with the insulation that she started to cough and her skin began to break out and itch.

Dolly's symptoms are consistent with those that can be caused by working with fiberglass materials according to the *Good Practice Manual for Insulation Installers* written in August, 1977, by the U.S. Department of Health, Education and Welfare. This manual, which was submitted for the record by Dolly's counsel, provides in relevant part:

"Fiberglass is one of the materials that can be highly irritating to your skin. It causes itching wherever it touches you. The tenderer the skin area, the more it will itch.

\* \* \* \* \* \*

"The tiny fibers from fiberglass break off and stick into your skin. You can't see them, but you know they are there because they hurt or itch.

\* \* \* \* \* \*

"Respiratory irritants are those which bother your nose, throat, and lungs. Some irritants make them itch and burn. Materials like dust and small fibers from glass or mineral wool can make your nose and throat sore. Also, dusts from other materials like vermiculite, perlite, and cellulose make you sneeze and cough."

The Bureau asserts that a short-term exposure to fiberglass insulation could not cause the symptoms suffered by Dolly, and in support of that assertion the Bureau submitted a letter written by Bobby J. Gunter, Ph.D., Industrial Hygienist, for the U.S. Department of Health, Education and Welfare in which he states in relevant part:

"I have never observed an individual that has developed chronic respiratory disease from fiberglass. It would be impossible to document her [Dolly's] symptoms from fiberglass exposure with the information that was forwarded to me. One would have to know what else was present and what her total exposure was. I can say

that the literature indicates that permanent lung 'respiratory' damage from fiberglass doesn't exist."

Dr. Gunter's letter has little, if any, probative value for determining whether or not Dolly's injury is fairly traceable to her employment. Dr. Gunter's opinion relates solely to the fact that fiberglass doesn't cause "permanent" respiratory damage and that he has never observed an individual with "chronic respiratory disease" as a result of fiberglass exposure. The Bureau does not assert, nor could it reasonably do so, that the legitimacy of Dolly's claim requires her to demonstrate that fiberglass insulation can cause permanent or chronic respiratory damage, because Dolly's claim is for a temporary condition allegedly caused by her work with the fiberglass insulation.

In support of its position that Dolly's condition could not be caused by her short-term exposure to the fiberglass insulation, the Bureau also refers to a letter written by Dr. Turkula, dated July 13, 1978, in which the doctor responded to information he received from the Bureau that Dolly was exposed to the fiberglass insulation for only one and one-half hours. In that letter Dr. Turkula states, in relevant part:

"I was not aware at the time I saw her that she only had very minimal exposure to fiberglass, as is stated elsewhere, that she worked with this material for a whole hour and a half. There is nothing spurious about her cough when she sits in my office here and continues to cough very frequently while I am interviewing her. "My impression is that she has a reaction to more than just one agent. I explained to her it could be from any construction material dust that she is reacting to.... "I am sure your experts are more aware of occupational dust hazards than I am. As I said before, with this short exposure to fiberglass, it is doubtful whether this is the cause of her cough. Perhaps as you read our summaries and our case history at the office plus admission and discharge summaries from the hospital, you will be able to make up your minds on this problem."

In his written report, dated June 6, 1978, Dr. Turkula diagnosed Dolly as having "tracheobronchitis, persistent, subsequent to fiberglass exposure," and he stated that Dolly's disability was due to an occupational disease or injury of which he was satisfied there was no misrepresentation.

The most that can be said on behalf of the Bureau's position as it relates to the significance of Dr. Turkula's statements is that Dr. Turkula's letter of July 13, 1978, contains apparent inconsistencies where he states that it is doubtful that Dolly's cough was caused by "this short exposure to fiberglass" but that, "it could be from any construction material dust that she is reacting to."

■ The adversary concept has only limited application to claims for workmen's compensation benefits and the Bureau, in carrying out its statutory duties, acts in a quasi-judicial capacity and should be primarily concerned with the proper, fair, and just determination of any claim submitted. *Bromley v. North Dakota Workmen's Compensation Bureau,* 304 N.W.2d 412, 416 (N.D.1981); *Steele v. North Dakota Workmen's Compensation Bureau,* 273 N.W.2d 692, 702 (N.D.1978). Accordingly, it is inappropriate for the Bureau to rely only upon that part of an inconsistent medical report which is favorable to the Bureau's position without attempting to clarify the inconsistency. *Bromley, supra,* at 417.

■ In denying Dolly's claim, the Bureau found that she was not credible because she has a hysterical personality with hypochondriacal neurosis. In support of its finding, the Bureau submitted the deposition of Dr. Rufino R. Ramos who is a licensed M.D. and a psychiatrist with approximately eight years of practice in the psychiatric field. Dr. Ramos stated his opinion, through his deposition, that Dolly has a hysterical personality which he defined as someone who "overdramatizes events or feelings." However, Dr. Ramos did not examine Dolly until March, 1980, almost two years subsequent to the date she was allegedly injured while

working for Serve and Save Lumber Company. Consequently, Dr. Ramos did not claim that he had any basis upon which to give an opinion regarding the legitimacy of those injuries allegedly sustained by Dolly as a result of that employment. Furthermore, Dolly's credibility as a witness is not particularly significant for purposes of determining whether or not she has a compensable injury in this case, because the existence of her alleged injury, her tracheobronchitis condition, was independently verified by several doctors one of whom, upon examining her, thought it necessary to hospitalize her for the condition.

Upon reviewing the entire record in this case we conclude that the Bureau's finding that Dolly's injuries were not causally related to her employment is not supported by a preponderance of the evidence.

In its judgment the district court provided: "the claimant is awarded and is to be furnished medical and hospital costs in connection with her injury of May 5, 1978 pursuant to 65–05–07 NDCC and other related statutes" thereby leaving to the Bureau's discretion on remand a determination of the specific medical and hospital costs to which Dolly is entitled from the workmen's compensation fund.

The judgment also provided "the claimant is entitled under 65–05–09 NDCC to disability compensation for temporary total disability from May 10, 1978 until July 7, 1978." The district court apparently based its determination of the disability period on Dr. Turkula's written report, dated June 8, 1978, which states "on 05–30–78 the patient was advised not to return to her former job and also advised that it could take two to three weeks for this to clear up" and on a memo written by Dr. Turkula, dated July 7, 1978, wherein the doctor states that Dolly is able to return to work. Upon reviewing the record, we are unable to find any evidence which would refute the court's determination that Dolly was temporarily disabled between May 10, 1978, and July 7, 1978.

In accordance with this opinion, the judgment of the district court is hereby affirmed.

SAND and PAULSON, JJ., concur.

VANDE WALLE, Justice, concurring specially.

I believe the majority opinion and the district court's opinion come dangerously close to a de novo review of the decision of the Workmen's Compensation Bureau rather than the standard of review prescribed by this court in *Power Fuels, Inc. v. Elkin,* 283 N.W.2d 214 (N.D.1979). However, I am convinced that the Bureau ignored the evidence of Roberts's actual injuries and the manner in which they were sustained because of the evidence relative to her hysterical personality with hypochondriacal neuroses. See also *Roberts v. North Dakota Workmen's Compensation Bureau,* 326 N.W. 2d 201 (N.D.1982). I therefore agree with the majority that the Bureau's finding that Roberts's injuries were not causally related to her employment is not supported by a preponderance of the evidence.

I am concerned about that portion of the opinion which sustains the trial court's determination, apparently after a de novo review on the record, that "the claimant is awarded and is to be furnished medical and hospital costs in connection with her injury of May 5, 1978 pursuant to 65–05–07 NDCC and other related statutes" and "the claimant is entitled under 65–05–09 NDCC to disability compensation for temporary total disability from May 10, 1978 until July 7, 1978." Because the Bureau determined that Roberts failed to prove that her condition was causally related to her employment, the Bureau made no findings as to the amount of compensation and the period for which such compensation should be paid and these issues therefore were not decided by the Bureau. Logic would indicate, at least to me, that the matter should be remanded to the Bureau for a determination as to the amount of compensation and the period for which such compensation should be paid. As the majority opinion notes, there is scant evidence in the record on this

issue.[1] I do not know the amount of compensation Roberts should receive nor the period during which she should receive it. It may be that Roberts is entitled to compensation for a period less than that prescribed by the trial court or it may be that Roberts would urge that she be compensated for a period longer than that prescribed by the trial court. It appears to me that this is a matter which should be determined initially by the Bureau, not the trial court nor this court.

After having said this, I point out that Section 65–10–02, N.D.C.C., provides:

"On appeal, the court shall determine the right of the claimant. If it determines the right in the claimant's favor, it shall fix his compensation within the limits prescribed in this title, and any final judgment so obtained shall be paid by the bureau out of the fund in the same manner as awards are paid."

This statutory provision was part of the original Workmen's Compensation Act and has not been amended since its enactment. See 1919 N.D.Sess.Laws, Chapter 162, Section 17. In a series of cases this court upheld the authority of the district court to fix the compensation on an appeal by a claimant from a decision of the Bureau. See *Gotchy v. North Dakota Workmen's Compensation Bureau*, 49 N.D. 915, 194 N.W. 663 (1923); *Hanson v. North Dakota Workmen's C. Bureau*, 63 N.D. 479, 248 N.W. 680 (1933); *Pearce v. North Dakota Workmen's C. Bureau*, 68 N.D. 318, 279 N.W. 601 (1938); *Burkhardt v. State*, 78 N.D. 818, 53 N.W.2d 394 (1952).[2]

All of these cases, with the exception of *Burkhardt*, were decided prior to the enactment in 1941 (N.D.Sess.Laws, Chapter 240) of the Administrative Agencies Practice Act, Chapter 28–32, N.D.C.C. Appeals from decisions of the Bureau are now subject to Chapter 28–32. See Section 65–10–01, N.D.C.C. Judge Christianson dissented in *Burkhardt*, although not specifically with regard to Section 65–10–02, noting that the adoption of the Administrative Agencies Practice Act wrought fundamental changes in the scope of review and the procedure on appeal from a determination of the Bureau. This court has in later years consistently recognized the limited review the trial court and this court may exercise on appeal from a determination of the Bureau and we have been aware of the constitutional issues that would arise by requiring the court to substitute its judgment for that of the administrative agency. See *Power Fuels, Inc. v. Elkin, supra.*

Although I believe there are some pragmatic as well as some constitutional questions involved in those instances in which a trial court makes findings of fact from a record transmitted from an administrative agency, particularly in areas in which the agency has not considered the precise matter, I realize that Section 65–10–02, N.D.C.C., appears to authorize the procedure followed by the district court. Neither Roberts nor the Bureau raised this precise issue on appeal and there has been no attack on the constitutionality of Section 65–10–02. I therefore reluctantly concur in the disposition made by the majority opinion. I suggest, however, that the relationship between Section 65–10–02 and Chapter 28–32 and the function of the district court on appeal from a determination by the Bureau

---

1. Section 65–10–01, N.D.C.C., provides that the appeal to the district court shall be heard on the record transmitted from the Bureau but also provides that in the discretion of the court, additional evidence may be presented pertaining to the questions of law involved in the appeal. Section 28–32–18, N.D.C.C., a portion of the Administrative Agencies Practice Act, authorizes the district court to permit additional evidence to be taken before the administrative agency if an application for leave to adduce additional evidence is made to the court. Apparently neither procedure was followed in this instance and the findings of the trial court are based entirely on the record transmitted to it by the Bureau.

2. In *Pearce,* the court stated:

"The statute does not contemplate that the bureau may deny a right to participate and then when the district court on appeal finds otherwise, that the bureau may require the matter to be sent back to it for the determination of the amount of the claim." 68 N.D. at 327, 279 N.W. at 605.

are matters which should be examined by the Legislature.

PEDERSON, J., concurs.