Debbra K. SATROM, Appellant,

v.

NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU and Sandie Werlinger, d/b/a Hair Shack, Appellees.

Civ. No. 10255.

Supreme Court of North Dakota.

Dec. 30, 1982.

Ohnstad, Twichell, Breitling, Arntson & Hagen, West Fargo, for appellant; argued by Michael D. Nelson, West Fargo.

Joseph F. Larson, II, Asst. Atty. Gen., Bismarck, for appellees.

PAULSON, Justice.

This is an appeal by Debbra K. Satrom from a judgment of the District Court of Cass County, dated May 11, 1982, affirming an order of the North Dakota Workmen's Compensation Bureau [Bureau], which denied Satrom's claim for benefits. We reverse the judgment of the district court and remand the case to the Bureau for further proceedings consistent with this opinion.

Satrom is a hairdresser who was formerly employed for a period of approximately six years at the Hair Shack in Fargo. Her work duties included cutting, styling, and shampooing hair as well as giving permanents and "tints" to clientele of the salon. These activities required some lifting, and repeated bending, twisting, and turning of the lower back. Most of these movements were associated with working on patrons' hair over a sink located at Satrom's station at the salon.

While working at the salon on the morning of July 24, 1980, Satrom experienced severe back pains and was then transported and admitted to the hospital. She had also suffered less extreme back pains on the evening of the previous day—which was a

non-work day—and she also admitted having had back pains on prior occasions.

Her attending physician diagnosed Satrom to be suffering from an acute disc syndrome, and, pursuant to the doctor's advice, she did not return to work for a period of fourteen weeks.

Satrom filed a claim with the Bureau on August 6, 1980, seeking medical expenses and disability benefits and alleging in the Bureau's Compensation and Medical Expense Claim form that her back injury was caused by her job-related duties of "shampooing and setting hair, then doing a perm. Bending over at times and standing on hard cement floor". The Bureau dismissed her claim on October 3, 1980. She then requested a formal hearing, which was held on April 23, 1981. Satrom, a co-worker, and the owner of the Hair Shack, were present and testified at the formal hearing. Dr. William T. Ferguson, an orthopedic surgeon and Satrom's attending physician, also testified through deposition. The Bureau issued its findings of fact, conclusions of law, and order affirming dismissal on June 1, 1981. The Bureau made the following findings of fact and conclusions of law:

## "FINDINGS OF FACT

### "I.

"That on the 6th day of August, 1980, the claimant above named filed a claim with this Bureau for compensation and/or medical expenses resulting from an alleged injury sustained on July 24, 1980.

### "II.

"That on July 24, 1980, the claimant was an employee of the Hair Shack, in Fargo, North Dakota, and the occupation of the claimant was hairdresser.

### "III.

"That the claimant alleges she suffered an injury to her back due to the bending and standing on a hard floor while performing the duties of her occupation on July 24, 1980.

### "IV.

"That the claimant does not document an injury by accident.

### "V.

"That the claimant's back pain began on July 23, 1980, the day prior to the alleged date of injury, without any known trauma.

### "VI.

"That the claimant had been gardening on the evening of July 23, 1980, and began to experience significant problems immediately afterwards.

### "VII.

"That the claimant had not even engaged in employment activities for five days prior to the onset of her back problem.

### "VIII.

"That the claimant's activities at home—such as, caring for her children, gardening and cleaning—were of greater significance in terms of the stress to her back, the length of time involved and the events immediately preceding her back pain then [sic] any employment activities.

## "CONCLUSIONS OF LAW

### "I.

"That the claimant has failed to prove that she suffered an injury by accident arising out of and in the course of her employment.

### "II.

"That the claimant has failed to prove that her condition was causally related to an employment injury.

"III.

"That the claimant has failed to prove that she is entitled to benefits under the North Dakota Workmen's Compensation Act in connection with her condition."

On July 8, 1981, Satrom appealed the Bureau's order to the District Court of Cass County. The district court entered its memorandum opinion upholding the Bureau's order on April 28, 1982, and judgment was entered on May 11, 1982.

Satrom in her appeal from this judgment raises the following issue for review:

Are the Bureau's findings of fact supported by a preponderance of the evidence?

Before addressing the specific issue as set forth by Satrom, we believe it necessary to initially determine whether or not the type of injury alleged in this case is compensable under the North Dakota Workmen's Compensation Act. The Bureau, during oral arguments before this court, took the position that in order to satisfy the "injury by accident" requirement of § 65–01–02(8) of the North Dakota Century Code, a claimant must be able to point to a sudden, unexpected, unforeseen, or unusual traumatic occurrence resulting in physical damage or harm, traceable to a definite time, place, or circumstance. This is not the law in our State.

█ In order to prove a right to participate in benefits available from the Bureau, the claimant must establish by a preponderance of the evidence that he or she was injured in the course of employment and that the resulting disability is causally connected to that employment. *Reynolds v. North Dakota Workmen's Compensation Bureau*, 328 N.W.2d 247, 248 (N.D.1982); *Robert v. N.D. Workmen's Comp. Bureau*, 321 N.W.2d 501 (N.D.1982), and cases cited therein; § 65–01–11, N.D.C.C. "Injury" is defined in § 65–01–02(8), N.D.C.C.:

"8. 'Injury' shall mean an injury by accident arising out of and in the course of employment including an injury caused by the willful act of a third person

directed against an employee because of his employment, but such term shall not include an injury caused by the employee's willful intention to injure himself or to injure another, nor any injury received because of the use of narcotics or intoxicants while in the course of the employment. If an injury is due to heart attack or stroke, such heart attack or stroke must be causally related to the worker's employment, with reasonable medical certainty, and must have been precipitated by unusual stress. Such term, in addition to an injury by accident, shall include:

a. Any disease which can be fairly traceable to the employment. Ordinary diseases of life to which the general public outside of the employment is exposed shall not be compensable except where the disease follows as an incident to, and in its inception is caused by a hazard to which an employee is subjected in the course of his employment. The disease must be incidental to the character of the business and not independent of the relation of employer and employee. The disease includes impairment and effects from radiation fairly traceable to the employment. It need not have been foreseen or expected, but after it is contracted, it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence.

b. An injury to artificial members."

In *Stout v. N.D. Workmen's Compensation Bureau*, 236 N.W.2d 889, 894 (N.D. 1975), this court opted to follow a majority of jurisdictions and adopted the so-called "usual exertion" rule in workmen's compensation cases, stating that "a claim, if otherwise within the terms of the workmen's compensation Acts, is compensable even though the cause is routine and not accidental, if the result is not foreseen, intended, or anticipated". In *Stout, supra* 236 N.W.2d at 894, we quoted with approval from Larson, *Workmen's Compensation Law*, § 38.-00, at 7–9 [currently found at page 7–18 in the 1980 edition thereof]:

"The 'by accident' requirement is now deemed satisfied in most jurisdictions either if the cause was of an accidental character or if the effect was the unexpected result of the routine performance of the claimant's duties. Accordingly, *if strain of claimant's usual exertions causes collapse from* heart weakness, *back weakness,* hernia, and the like, *the injury is held accidental.* A very substantial minority of jurisdictions require a showing that the exertion was in some way unusual, or make other reservations, but this line of decision causes difficulty because of the constant necessity of drawing distinctions between usual and unusual strains." [Emphasis added.]

■ Granted, *Stout* involved a claim for death benefits due to a heart attack and thus the above-quoted language relating to back weakness can be considered *obiter dictum.* Nevertheless, the underlying rationale of our decision in *Stout* leads us to the inescapable conclusion that back injuries, such as the injury alleged in the instant case, may satisfy the "injury by accident" requirement of § 65–01–02(8), N.D.C.C., and thus become compensable, not only if the cause was of accidental character, but also if the cause is routine and the result is not foreseen, intended, or anticipated.

■ We are cognizant of the fact that the Legislative Assembly's amendment of § 65–01–02(8), N.D.C.C., to require "unusual exertion" in cases of heart attack or stroke [*see* § 2, Ch. 579, 1977 S.L.] came about as a direct result of this court's decision in *Stout. Nelson v. North Dakota Workmen's Comp. Bureau,* 316 N.W.2d 790, 793 n. 2 (N.D.1982). However, because the Legislature specifically limited its amendment of § 65–01–02(8)[1] to cases of heart

attack and stroke, and because this court since the date of the 1977 amendment of § 65–01–02(8) has recognized the continued validity of our decision in *Stout* [*see Balliet v. North Dakota Work. Comp. Bureau,* 297 N.W.2d 791, 795 (N.D.1980)] we believe the "usual exertion" rule is applicable in the instant case. Thus, an injury such as the acute disc syndrome alleged in the instant case, which can be medically related to repeated stress or strain in a claimant's usual work exertions, is a compensable injury under the North Dakota Workmen's Compensation Act.

We next determine whether or not the Bureau's findings of fact are supported by a preponderance of the evidence. The Bureau does not dispute the fact that Satrom suffered an injury. Rather, the crux of the instant appeal is whether or not the Bureau's conclusion that the injury suffered by Satrom was not "an injury by accident arising out of and in the course of employment" [§ 65–01–02(8), N.D.C.C.] is supported by a preponderance of the evidence.

The standard that this court must use in reviewing appeals involving workmen's compensation claims was recently set forth in *Claim of Bromley,* 304 N.W.2d 412, 414 (N.D.1981):

"Pursuant to § 65–10–01, North Dakota Century Code, appeals from decisions of the Bureau may be taken to the district court in the manner provided in the Administrative Agencies Practice Act, Ch. 28–32, NDCC. The district court's judgment in such a case may be appealed to this Court pursuant to § 28–32–21, NDCC, which provides that this Court is to review an agency's decision as provided by § 28–32–19, NDCC. Accordingly,

---

1. In 1977, the Legislature also changed the first sentence of § 65–01–02(8), N.D.C.C., from "an injury arising in the course of employment" to "an injury *by accident* arising out of and in the course of employment [emphasis added]". *See* § 2, Ch. 579, 1977 S.L. The Bureau argues that the Legislature's insertion of the words "by accident" in this portion of the statute indicates that an injury must be of accidental character to establish a causal relationship between a claimant's alleged injury and his or her employ-

ment. We do not agree. This argument ignores the fact that § 65–01–02(8), N.D.C.C., nevertheless specifically continues to recognize the compensability of an "injury by accident" caused by a heart attack or stroke. We have also examined the legislative history of this amendment and find no support for the Bureau's interpretation of "injury by accident" to require some type of impact in order to be compensable.

we review the findings of fact, conclusions of law, and order made by the Bureau rather than the findings by the district court. *Steele v. North Dakota Workmen's Compensation Bureau,* 273 N.W.2d 692 (N.D.1978). On appeal of an administrative agency's decision the Civil Rules and Rule 52(a), NDRCivP, do not apply. Rule 81(b) NDRCivP. *Reliance Ins. Co. v. Public Service Commission,* 250 N.W.2d 918 (N.D.1977)."

■ We must affirm a decision of the Workmen's Compensation Bureau unless its findings of fact are not supported by a preponderance of the evidence. § 28–32–19(5), N.D.C.C. Our review of the Bureau's decision involves a three-step process whereby we determine whether or not the findings of fact are supported by a preponderance of the evidence, whether or not the conclusions of law are sustained by the findings of fact, and whether or not the decision is supported by the conclusions of law. *Nyhof v. N.D. Workmen's Compensation Bureau,* 325 N.W.2d 239, 241 (N.D. 1982); *Claim of Bromley, supra* 304 N.W.2d at 415.

We have defined "preponderance of evidence" in *Steele v. North Dakota Workmen's Comp. Bur.,* 273 N.W.2d 692, 697 (N.D.1978), as "evidence more worthy of belief", or "the greater weight of the evidence" or "testimony that brings the greater conviction of truth". In *Power Fuels, Inc. v. Elkin,* 283 N.W.2d 214, 220 (N.D. 1979), we added:

"In construing the 'preponderance of the evidence' standard to permit us to apply the weight-of-the-evidence test to the factual findings of an administrative agency, we do not make independent findings of fact or substitute our judgment for that of the agency. We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved

by the weight of the evidence from the entire record."

■ The Legislature has limited the Bureau to considering only the evidence in the official record (*see* § 28–32–06, N.D.C.C.) and, thus, this court will review only the record which was before the Bureau, the transcript of the formal hearing, and the evidence presented at the hearing; but we will not consider any material outside of this record. *Gramling v. North Dakota Workmen's Comp. Bur.,* 303 N.W.2d 323, 327 (N.D.1981). Finally, it is important that we remember that the Workmen's Compensation Act is to be liberally construed with the view of extending its benefit provisions to all who can fairly be brought within them. *Claim of Bromley, supra,* and cases cited therein.

■ We have reviewed the entire record in the instant case and conclude that a reasoning mind could not have determined, as did the Bureau, that the greater weight of the evidence is that Satrom's injury was neither causally related to her employment nor was it an injury by accident arising out of and in the course of employment.

The Bureau's conclusions appear to be based principally on its finding that Satrom's home activities, including caring for her two children, gardening, and cleaning,[2] contributed more significantly in terms of stress to her back and its resultant injury than did her job-related duties. The evidence is undisputed that Satrom had never sought medical attention for her back problems prior to July 24, 1980.[3] Satrom testified that she began experiencing backaches both at home and at work "possibly a year or so" before she required medical treatment.

Dr. Ferguson gave the following explanation of acute disc syndrome:

---

**2.** The record also contains references to the fact that Satrom waterskied and bowled on occasion. However, Satrom testified that she had not waterskied since the summer of 1979 and had not bowled since April of 1980, several months prior to the date of injury.

**3.** Satrom testified during the hearing that on one occasion she visited a chiropractor in regard to pain in her neck.

"It's not usually one episode that produces the disc. It's minute trauma until the fibers supporting the disc give way and then you have an acute episode and the disc starts pushing on the nerve root going down the leg.... It's mostly associated with degenerative discs and you see degenerative arthritis of the back produce a lot of symptoms down the back and it's like a bell-shape curve....

.    .    .    .    .

"There was no evidence of acute trauma like a blow to the back. I think you were referring to that, there was no broken bone. There was no dislocation of the lower vertebrae joints, no acute trauma, acute injury, a sudden blow. And most discs don't fall in the category following "an acute trauma or acute blow." It's the constant wear and tear of the low back and if it weakens the back and if you don't have strong ligaments supporting the disc then the disc gives way and you can just go over and pick up a safety pin and have an acute disc. But when you really get the detailed history of that individual there's usually been a history of repetitive bending and lifting with the back to lead up to the fact when he bends over and picks up the pin he has acute disc. It's just by chance that happens. Just getting out [of] a chair you can see acute disc but when you go into the history of that individual he has a history of repetitive bending or extending the back."

Satrom and a co-worker, Connie Laude, testified as to the lifting and the repeated bending, twisting, and turning movements associated with their jobs. Sandie Werlinger, Satrom's employer, did not dispute the descriptions they gave of their employment duties, but did dispute the precise amount of time spent in an average day performing these duties. Dr. Ferguson, who, as the treating physician and the sole source of expert medical testimony in this matter, supplied records and testified by deposition, repeatedly described Satrom's work activities as "the main contributing factor to the disc problem she has of the low back". In the face of this uncontradicted evidence, we cannot say that the Bureau's decision denying benefits is supported by a preponderance of the evidence.

The Bureau, however, argues that the doctor's opinion was based entirely upon the work history as related to him by Satrom and thus the doctor was not aware of her outside activities in reaching his conclusion. As a result, the Bureau urges that it is more likely that Satrom's injury was more causally related to her home activities, rather than to her work duties. This contention is not supported by the record. The deposition of Dr. Ferguson reflects the following colloquy between counsel for the Bureau and the doctor:

"Q [By Mr. Gross] ... in arriving at the etiology of any condition but especially one such as this you have to rely upon the history as given to you by the complainant, right?

"A [By Dr. Ferguson] Yes.

"Q If that history omits any significant factors your diagnosis as to the etiology would be incorrect?

"A My opinion would be altered. Not so much incorrect, but it might throw a different light on it.

"Q We're going to be having a hearing in this matter and if we learn through that hearing that, in fact, in that particular beauty shop the chairs are hydraulic, that they can be adjusted to the height of the beautician, that she has to do very little or minimal bending or, because the chairs are adjustable, that, in fact, the sinks are at eye level and not so that they require her to bend over, that your diagnosis as to the etiology in this case would probably change?

"A It would alter in my opinion, but I think there's definitely a work relation here.

"Q You're saying it could be a contributory factor?

"A It's a good contributory factor. I might change my opinion. Maybe a 90 percent come down to 60 percent, but I'm still at a 50 percent contributing

factor of her occupation. Before you told me that she never had to lift her child and she didn't have to do any bending in the performance of her outside duties, none of that, then I'd swing more to the job. But how she described her job, I think it's a big contributing factor.

"Q But again when you say 'how she described her job' you're relying on her history?

"A Sure.

"MR. [MICHAEL] NELSON [claimant's counsel]: Even as Dr. Gross [sic] described her job, *even as Mr. Gross described her job duties it is a strong contributing factor?*"

"THE WITNESS; *That's right.*" [Emphasis added.]

■ If the Bureau's position is that Satrom's injury must not only be causally related to her employment, but that the employment must be the sole cause of her acute disc syndrome, we do not agree. It is sufficient if the work-related stress is a "substantial contributing factor" to the injury. *Nelson v. North Dakota Workmen's Comp. Bureau,* 316 N.W.2d 790, 795 (N.D. 1982). Thus, "the fact that an employee may have physical conditions or personal habits" which make him or her more prone to such an injury does not constitute a sufficient reason for denying a claim if the preponderance of the evidence indicates that the injury "was causally related to the worker's employment, with reasonable medical certainty", and was precipitated by usual stress. *Nelson, supra.*

The Bureau also argues that, as the finder of facts, it is not required to adopt *per se* the testimony or opinion of any witness.[4] To a limited extent, we agree with the

Bureau. However, if we were to carry this assertion to its logical conclusion, the Bureau could properly deny *every* claim that comes before it simply by stating on appeal that it did not believe those persons who testified during the claimant's hearing. No doubt this result would be compelled if our Legislature had allowed the Bureau unfettered discretion in deciding whether or not to grant or deny a worker's claim for benefits. However, § 28–32–19(5), N.D.C.C., requires that the Bureau's findings of fact be supported by a preponderance of the evidence, and where, as in the instant case, these findings are not supported by the greater weight of the evidence in the record, the Bureau's decision denying benefits will not be upheld.

We have previously stated that in claims involving this type of "injury by accident", the "testimony of a medical expert is always desirable and in most cases indispensable to prove" causation. *Stout, supra* 236 N.W.2d at 892 [quoting from *Foss v. North Dakota Workmen's Compensation Bur.,* 214 N.W.2d 519, 524 (N.D.1974) ]. We have also stated that it is proper for the Bureau to take the evidence as a whole, evaluate it, and "arrive at a *conclusion consistent with the overwhelming weight of the medical evidence* [emphasis added]". *Davis v. North Dakota Workmen's Comp. Bureau,* 317 N.W.2d 820, 823 (N.D.1982). Most recently, in *Roberts v. North Dakota Workmen's Compensation Bureau,* 326 N.W.2d 702, 706 (N.D.1982), a majority of this court stated:

"The adversary concept has only limited application to claims for workmen's compensation benefits and the Bureau, in carrying out its statutory duties, acts in a quasi-judicial capacity and should be primarily concerned with the proper, fair,

4. In this regard, the Bureau argues that the evidence supporting Satrom's claim that her injury arose out of and in the course of employment is based upon "surmise, conjecture, and mere guesswork", and, as such, that it is insufficient to support the granting of benefits. *Kuntz v. North Dakota Workmen's Compensation Bureau,* 139 N.W.2d 525, 529 (N.D.1966). *See also Booke v. Workmen's Compensation Bureau,* 70 N.D. 714, 297 N.W. 779 (1941). In

view of the uncontradicted evidence relating to Satrom's work duties and the doctor's description of her acute disc syndrome, we believe that the only truly speculative theory of causation in this case was that adopted by the Bureau in denying benefits, *i.e.,* that Satrom's injury was more causally related to her activities at home, a theory with which this court does not agree.

and just determination of any claim submitted. *Bromley v. North Dakota Workmen's Compensation Bureau,* 304 N.W.2d 412, 416 (N.D.1981); *Steele v. North Dakota Workmen's Compensation Bureau,* 273 N.W.2d 692, 702 (N.D.1978). Accordingly, it is inappropriate for the Bureau to rely only upon that part of an inconsistent medical report which is favorable to the Bureau's position without attempting to clarify the inconsistency. *Bromley, supra* at 417."

We believe our case law clearly indicates that in cases such as the one at bar, where expert medical testimony is desirable if not essential to a determination of causation, the Bureau may not simply ignore competent medical testimony without expressly setting forth in its findings of fact adequate reasons, which are supported by the record, for doing so. *See Inglis v. North Dakota Workmen's Comp. Bureau,* 312 N.W.2d 318, 323 (N.D.1981). In the present case, the Bureau stated during oral arguments that "perfect common sense" indicates Satrom's injury is not principally attributable to her employment and that the doctor had "apparently taken a personal interest" in the case because he testified as he did. We find nothing in the record to support these bald assertions.

We do not believe that a holding in Satrom's favor will turn our workmen's compensation fund into a general health or accident insurance fund, as the Bureau predicts. *See Booke v. Workmen's Compensation Bureau,* 70 N.D. 714, 297 N.W. 779, 781 (1941); *Sandlie v. North Dakota Workmen's Comp. Bureau,* 70 N.D. 449, 295 N.W. 497, 499 (1940). Nor do we believe that this decision will result in allowing employees workmen's compensation benefits for "an ordinary disease of life, to which the general public outside of employment is exposed". *Suedel v. North Dakota Workmen's Compensation Bureau,* 218 N.W.2d 164, 172 (N.D.1974). We hold only that where, as here, the claimant alleges a compensable injury and establishes by a preponderance of the evidence that such injury occurred in the course of employment and that the resulting disability was causally connected to that employment, the Bureau's decision denying benefits will not be upheld.

In accordance with Satrom's request for relief, we remand this case to the District Court of Cass County for the purpose of taxing costs and attorney fees against the Bureau, pursuant to § 65–10–03, N.D.C.C. Satrom also requests that our court direct the district court to remand the matter back to the Bureau with an order directing it to fix payments to be made as follows:

"1. To Debbra K. Satrom (Claimant), temporary total disability under N.D.Cent.Code § 65–05–09, $110.00 per week for 14 weeks, for a total amount of $1,540.00;

"2. To Dakota Hospital and Dakota Clinic, Fargo, North Dakota, for medical and hospital expenses under N.D.Cent.Code § 65–05–07, in the total amount of hospital and clinic bills incurred to date for the care and treatment of Claimant's work injury;

"3. Also under N.D.Cent.Code § 65–05–07, for medical and hospital services and nursing care for Claimant for so long as such care is necessary, in connection with said work injury; and

"4. That the District Court's order be made retroactive to July 24, 1980."

Because both the Bureau and the district court determined that Satrom failed to prove that her injury was causally related to her employment and that her acute disc syndrome was an injury by accident arising out of and in the course of her employment, neither made findings as to the amount of compensation and the period for which such compensation should be paid. Thus, these issues were not decided by the Bureau or the district court. For that reason[5] we

---

**5.** In *Roberts v. North Dakota Workmen's Compensation Bureau,* 326 N.W.2d 702 (N.D.1982), a majority of this court recently sustained a trial court's determination that the claimant

was entitled to disability compensation for temporary total disability "from May 10, 1978 until July 7, 1978", although the Bureau had not made findings as to the amount of compensa-

remand the matter to the Bureau for a determination of her disability,[6] including the amount of compensation and the period for which such compensation shall be paid to Satrom.

Accordingly, we reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.

tion and the period for which such compensation should be paid. That case is distinguishable from the instant case because in *Roberts, supra,* the district court reversed a decision by the Bureau denying benefits and proceeded to fix the claimant's compensation under the authority granted in § 65–10–02, N.D.C.C. In the instant case, the district court affirmed the Bureau's denial of benefits and thus no determination of these issues has occurred in the proceedings below.

For a discussion of the relationship between § 65–10–02, N.D.C.C., and Chapter 28–32, N.D.C.C., our Administrative Agencies Practice Act, see the specially concurring opinion of Justice VandeWalle in *Roberts, supra.*

6. The possibility of an award on an apportioned basis, pursuant to our aggravation—preexisting condition· statute, § 65–05–15, N.D.C.C., was not considered by the Bureau. On remand, the Bureau may wish to consider the possibility of a "preexisting condition" and of the applicability of the aggravation statute. Construing § 65–05–15, N.D.C.C., in *Balliet v. North Dakota Work. Comp. Bureau,* 297 N.W.2d 791, 794 (N.D.1980), we stated:

"To activate the statute, a preexisting condition has to be accompanied by an actual impairment or disability known in advance of the work-related injury. There must, of course, be a point at which it can be determined that a significant preexisting condition, in fact, exists. Putatively, almost *every* injury could, with sufficient scrutiny, be linked to some pre-existing weakness or susceptibility. See, Larson, *Workmen's Compensation Law,* Vol. 1, § 12.20, at 3.333. To read 'condition' so broadly would vest an unacceptable amount of discretion in the Bureau and threaten the express policy of construing the Workmen's Compensation Act liberally in favor of the workman. *Booke v. Workmen's Compensation Bureau,* 70 N.D. 714, 297 N.W. 779 (1941). A liberal construction in favor of the workman requires that we construe all provisions of the statute, if possible, so as to avoid forfeiture and afford relief. *Bordson v. North Dak. Workmen's Compensation Bureau,* 49 N.D. 534, 191 N.W. 839, 841 (1923). By tying 'condition' to a specific and disabling state of health, we think a fair standard is established. In the absence of impairment, the statute does not allow for apportionment by the Bureau." [Emphasis in original.]